Matter of the Estate of MORRIS HERRMANN, Deceased.

(Surrogate's Court, New York County, February, 1920.)

Transfer tax — value of " good will " determined by actual sale of business — appeal — wills — executors and administrators.

The rules laid down in the various decisions for the valuation of " good will " do not apply where there has been an actual sale made in good faith.

The value of the " good will " of a business consists of three elements — net profits, capital and number of years' purchase — and where a sale of the assets of a firm, of which decedent was at the time of his death a member, was made before a transfer tax appraisal, it was error for the appraiser to use his estimate of the speculative element of a number of years' purchase, as against the real market value of the good will under the test of a fair and open sale.

Decedent at the time of his death, February 9, 1918, was a partner in a long-established firm, the success of which was in large measure due to his business capacity. About seven months after his death his executors in carrying out the instructions of the will to sell his interest in the business agreed to sell all the assets of the firm, including the good will, at a price slightly less than the net book value of the physical assets and the accounts, based upon an enumeration of assets and liabilities made by an accountant, and the adjustments were determined as of July 1, 1918. In a transfer tax proceeding it conclusively appeared that the executors had obtained the best possible price, the contract and the schedules showed no separate item of cost for good will, and there was no proof that the value of decedent's interest in the business at his death

Surrogate's Court, New York County, February, 1920. [Vol. 110.

exceeded the sum realized on the sale. *Held,* that the good will was a non-existent item, and a transfer tax imposed thereon was unauthorized. The order fixing the tax reversed and the matter remitted to the appraiser for the purpose of excluding the good will as a separate element of value.

APPEAL from an order assessing the transfer tax.

Guggenheimer, Untermyer & Marshall (Louis Marshall, of counsel), for appellants.

Lafayette B. Gleason, for state comptroller.

FOLEY, S. The executors appeal from the order assessing a tax upon the estate of the decedent, and contend that the appraiser erred in appraising the value of decedent's interest in the good will of the firm of Morris Herrmann & Co. at $116,312.82.

The decedent died on February 9, 1918. At the time of his death he was a member of the firm of Morris Herrmann & Co. The firm was engaged in the business of manufacturing colors. It had an office in New York city, and factories in Newark and Elizabethport, N. J. It was founded in 1893, but the partnership agreement in force at the date of death was executed on February 16, 1916. It provided that the partnership should continue for one year from its date, and from year to year thereafter. It also provided that the decedent should be entitled to seventy-five per cent of the profits. The decedent was the active head of the business; the other partner was a woman, who took no part in its management or operation. For the years 1910 to 1913, inclusive, the net profits of the business averaged $25,000 a year. For the years 1914 to 1917, inclusive, they averaged about $158,000 a year. The executors' proofs showed that the large profits made by the firm in the latter period were due to the abnormal demand for dry

colors caused by the war conditions, and by the absence of competition from foreign manufacturers.

The firm had no trade marks or trade names. Its success was due in a great measure to the business capacity of the decedent. His industry and his intimate knowledge of the various details connected with a manufacture of colors were the main factors in its development and successful operation. When he died these important factors were lost. But the firm did a very profitable business; it was sufficiently long established to be known to the trade, and the old customers might continue to deal with a new firm which had acquired the right to use the name of Morris Herrmann & Co. In theory, therefore, it had a good will. *Matter of Silkman,* 121 App. Div. 202; *Matter of Ball,* 161 id. 79.

Under the will it was the duty of the executors to sell the testator's interest in the firm. The evidence submitted to the appraiser shows that the executors endeavored to do this immediately after they had qualified. They sought to interest other manufacturers of colors, and opened negotiations with many possible purchasers. They did not succeed, however, in effecting a sale until October 1, 1918, about seven months after the death. Under the contract of sale the executors agreed to sell all the assets of the firm, including the good will. The price was based upon an enumeration of the assets and liabilities of the firm made by an accountant, and the adjustments were determined as of July 1, 1918. The actual price paid was $283,831.66. The estate's share of the price was $158,209.60. It was a *bona fide* sale, and the purchasers — Messrs. Marcus M. Marks and Frederick W. Marks — were not connected in business with the executors or the decedent.

The evidence shows conclusively that the executors

obtained the best possible price. The contract of sale and the supporting schedules show no separate item of cost for the good will, but it must be assumed that its value was included in the total amount paid.

The state comptroller did not submit any proof to show that the executors failed to use due diligence and prudence in the sale of the business, or that their negligence prevented the realization of a greater sum. In fact, no proof whatever was submitted by him to show the value of the good will or that the price obtained by the executors for the business was inadequate. The price paid was slightly less than the net book value of the physical assets and the accounts. It must be assumed that the purchasers, in paying the sum mentioned for the entire business considered that the good will enhanced the value of the physical assets. Upon this assumption the actual amount received by the estate must represent the entire value of decedent's interest in the business, including the good will.

The method of computation used by the appraiser was as follows:

He took the actual selling price of the business, $283,831.66, as a basis for ascertaining the decedent's interest, and found that interest to be $158,209.60. This he describes as " decedent's interest in present worth of business, based on *actual sale price* as per affidavit of Nat. Oberdorfer."

He therefore exhausted all the elements of value that entered into the sale.

He thereupon arbitrarily added the sum of $116,-312.82. This he describes as " decedent's interest in good will of business figured on a basis of two years' purchase on average earnings over a period of eight years." As the decedent's share was seventy-five per cent the total value of good will would be $155,000.

The inconsistency of this scheme of valuation is apparent. The good will was specifically mentioned in the agreement and was included in the sale. Having accepted the selling price as the measure of value, the appraiser erred in including the additional item of his estimate of good will. To that extent it was a duplication. Under his computation the value of the business was increased over the actual sale price by the sum of $155,000. The rules laid down in the various decisions for the valuation of good will cannot be applied where there is an actual sale made in good faith.

The imposition of a tax upon this non-existent item is unjust to the estate and not in accord with the provisions of the Tax Law.

There is no more speculative or intangible subject of valuation than good will. It is difficult to fix from its very nature. Its value consists of three elements — net profits, capital and number of years' purchase. The fluctuating profits of a business for a period of years must be considered in determining what is a fair average and the length of that period is also to be determined in each particular case. Finally, the number of years' purchase must be considered. This sale had taken place before the appraisal was made. It was error, therefore, for the appraiser to use his estimate of this speculative element as against the real market value of the good will under the test of a fair and open sale. While it is the value of decedent's interest at the date of his death that is subject to the transfer tax (*Matter of Davis,* 149 N. Y. 539; *Matter of Penfold,* 216 id. 163), there was no proof before the appraiser that the value of that interest at his death exceeded the price realized upon the sale. Indeed, the proof shows that the net book worth of the business had increased between the date of death

Surrogate's Court, New York County, February, 1920.    [Vol. 110.

and the date of sale.   Selling price is not conclusive evidence as to value, but it seems to me, under the circumstances disclosed here, that the proceeds of the actual sale of the business of Morris Herrmann & Co. are a sufficient approximation to the fair market value.   The Appellate Division, first department, in the case of *Matter of Arnold,* 114 App. Div. 244, 246, applied that test in the following language:   "Certainly the evidence of a real estate appraiser, who testifies to an opinion of the value of the property, is not sufficient to overcome an actual sale, where the evidence is that diligent efforts had been made to sell the property and the price at which it was sold was the best that could be obtained."

The order fixing tax will be reversed and the appraiser's report remitted to him for the purpose of excluding the good will as a separate element of value.

Order reversed.