In the Matter of the Transfer Tax upon the Estate of GEORGE GARR HENRY, Deceased.

ELIZABETH LEE HENRY, Individually and as Executrix of GEORGE GARR HENRY, Deceased, Appellant; STATE TAX COMMISSION, Respondent.

First Department, December 1, 1922.

Taxation — transfer tax — money of non-resident advanced or loaned to partnership in this State of which he was active member, is subject to transfer tax — Tax Law, § 220, construed — proportion of commissions of executrix on property situated outside State deductible in fixing net transfer.

Money advanced or loaned to a partnership in this State by a non-resident, who was an active member of the partnership, which was used in the partnership business, is subject to a transfer tax under subdivision 2 of section 220 of the Tax Law which imposes a transfer tax "when the transfer is by will or intestate law of capital invested in business in the State by a non-resident of the State doing business in the State either as principal or partner."

In determining the net amount of the transfer there should be allowed as a deduction the proportion of the commissions of the executrix on property situated outside of New York which the net New York estate bears to the entire estate wherever situated.

APPEAL by Elizabeth Lee Henry, individually and as executrix, etc., from an order of the Surrogate's Court of the county of New

York, entered in said Surrogate's Court on the 17th day of August, 1920, affirming a prior order fixing the tax upon the transfers of the property of the decedent.

*Cravath, Henderson, Leffingwell & de Gersdorff* [*Charles A. Sawyer* of counsel; *Carl A. de Gersdorff* with him on the brief], for the appellant.

*Charles M. Travis* of counsel, for the State Tax Commission, respondent.

DOWLING, J.:

On July 5, 1917, George Garr Henry died a resident of Morristown, in the State of New Jersey. He was then one of seven junior partners in the banking and brokerage firm of William Salomon & Company which conducted business in New York city, under articles of copartnership, dated December 31, 1916, as successor to a similar firm of the same name.

The articles of copartnership provided that each partner should receive the fixed percentage therein specified of the profits, and should bear the fixed percentage therein specified of the losses. When Mr. Henry died his right in the profits (sixteen and one-quarter per cent) was $54,871.75. On the same date the firm was indebted to him for advances made to the amount of $203,360.89.

His executrix paid the tax assessed upon the testamentary transfer of his right in the profits, because that right constituted an interest in a partnership business conducted in New York; but she refused to pay the tax assessed on the testamentary transfer of his right derived from advances to his firm on the ground that such right was not " an interest in any partnership business conducted, wholly or partly, within the State of New York " or " capital invested in business in the State by a non-resident of the State doing business in the State either as principal or partner." Her contention is that these advances made by decedent to his firm were solely loans, while the respondent's contention is that they were contributions to the capital of the partnership, or in any event constituted capital invested by decedent in the business.

The articles of copartnership provide in part as follows:

"Article III. The capital of the partnership shall be one hundred thousand dollars ($100,000) all of which shall be contributed by the senior partner.

"Article IV. The senior partner from time to time shall advance to the partnership such additional sums of money as the business may in his judgment require and the junior partners may make similar advances in such amounts as may be approved by the senior partner. The advances of any partner may be made either in

cash or by the loan of securities upon such a basis of valuation as may from time to time be agreed upon between the partners. Inasmuch as Stewart Waller is a member of the New York Stock Exchange, he shall be credited with the amount of the market value of his stock exchange membership as of the first day of January, 1917, as though such amount had been advanced by him in cash to the partnership on that date. The credit to him on account of such membership shall be adjusted on each succeeding first day of January so as to correspond with the then market value of such membership.

"Article VIII. The profits which may accrue from the business of the partnership from and after January 1, 1917, after deducting therefrom all expenses and outlays attending the conduct and management of the business and also all losses that may be sustained therein, and after paying and deducting interest at the rate of five per cent. per annum upon the capital of the partnership and upon the advances by each partner to the partnership, shall be divided among the partners as follows: [here follow the percentages assigned to the various partners.]

" In case any junior partner shall cease to be a member of the firm his share of the future profits and losses shall be added to the share of the senior partner until some other disposition thereof shall be made by agreement among the partners."

By article XI it was provided in part that upon any junior partner ceasing to be a member of the firm, any advances made by him thereto, and his share of the profits, if any, should be paid in cash or securities, as therein provided, within two months after his withdrawal.

The firm carried on its books a capital account, in which was entered the capital of the firm, $100,000, credited to William Salomon.

The amount of all advances made to the firm by the members thereof pursuant to article IV of the articles of copartnership, including cash securities, Stock Exchange seat and other property, was $7,848,426.14 on January 1, 1917, when the new copartnership commenced business under the articles. The advances made by decedent to his firm, amounting to $256,602.65, were all credited as of January 1, 1917, and no further advances were made by him thereafter. That amount represented his share of the profits made in the prior year (1916) and previous years from the old firm, less his withdrawals and less his share of the losses. These profits had been left in the business and were used therein. That amount was carried on the books of the firm to the credit of the decedent for advances. Between January 19, 1917, and July 3, 1917,

decedent withdrew from the firm a total of $59,409.56, which withdrawals were entered in the books of the firm as charges against the decedent in an account separate from the account of decedent's advances.

After decedent's death on July 5, 1917, the firm paid to decedent's representatives the sum of $258,232.64. Said sum was arrived at as follows: The decedent's estate was credited in the decedent's advance account with interest from January 1 to July 5, 1917, at the rate of five per cent per annum upon the amount of the decedent's advances as of January 1, 1917, and the estate was debited in the decedent's withdrawal account with interest at the rate of five per cent per annum upon the amount of the decedent's withdrawals from the dates thereof respectively to July 5, 1917, the excess of interest credited over interest debited amounting to $6,167.80. From the total of said advances and interest there was deducted the total amount of decedent's withdrawals, leaving a balance as of July 5, 1917, of $203,360.89.

There was added to this balance the sum of $55,980, constituting the decedent's share of the profits of the firm from January 1, 1917, to July 5, 1917, and there was deducted from the total the sum of $1,108.25, constituting the decedent's share of the losses of Salomon & Company, London, during the same period, leaving a balance of $258,232.64, which was the amount paid by the firm to the decedent's representatives. Said profits and losses were computed pursuant to and in accordance with the said articles of copartnership, as understood by the firm.

It was the custom of the firm to carry withdrawals by its members for personal expenses in accounts separate from those for advances. The shares of the partners in the net profits for a calendar year were credited to their advance accounts at the close of business on the last day of that year, and their advance accounts were credited with interest from the beginning of a calendar year on the advances as they then stood, and interest was debited against them in their respective withdrawal accounts on each withdrawal for personal expenses made during the course of the year, from the date thereof.

The firm frequently made purchases of securities and participated in syndicates and underwritings to an extent far in excess of $100,000. On January 1, 1917, it had securities carried on its books at an aggregate value in excess of $7,500,000 and was a participant in syndicates to the extent of over $2,700,000.

The net profits of the former firm of William Salomon & Company for the year 1916 amounted to $3,457,139.72. The business of the new firm for the full year 1917 resulted in a net loss of $171,279.49.

It is shown by·the testimony that, during the period from January 1, 1917, to the time of decedent's death, the so-called advances made by him, amounting to over $200,000, were used in the business of the firm. The only witness called, Weinberger, one of the firm, testified as follows: " Q. At the time of his death what was his interest in the profits for the year 1917? A. You mean the percentage? Q. No — in figures. A. $54,871.75. Q. Had that amount actually been set aside in cash for his account, or was it invested in the business? A. It was invested in the business."

He further testified: " Q. And when you say — your firm as bankers are in the habit of borrowing sums of money from various people, banks and others outside of your own members, are you not? A. Yes. Q. And the proceeds of such loans. are also used in your business? A. Yes. Q. Was there any distinction made between the use of such loans and the use of such moneys advanced by Mr. Henry? A. No."

In answer to the question whether there was any prohibition in the partnership contract against decedent withdrawing the amount of his advances, or any part thereof, at any time, he said " No."

The main question in dispute on this appeal is whether or not these advances (or the balance of $203,360.89 after deducting withdrawals) constituted an interest in the partnership or capital invested in business in this State within the meaning of subdivision 2 of section 220 of the Tax Law. The executors claim that the advances were loans and were, therefore, not subject to tax. The State Tax Commission claims that they were contributions to capital and constituted an interest in the partnership; or, if not, that they were capital invested in the business by the decedent within the meaning of section 220 of the Tax Law.

By chapter 732 of the Laws of 1911, section 220 of the Tax Law, in relation to taxable transfers, was amended so that subdivision 2 thereof provided for the imposition of a tax upon the transfer of any tangible property within the State by non-residents only: " When the transfer is by will or intestate law, of tangible property within the State, and the decedent was a non-resident of the State at the time of his death."

By chapter 664 of the Laws of 1915 section 220 was amended so as to provide for the imposition of a tax upon the transfer of certain classes of securities, and also upon the transfer " of an interest in any partnership business conducted, wholly or partly, within the State of New York, in such proportion as the value of the real property of such corporation, joint stock company or association, or as the value of the entire property of such partnership located in the State of New York bears to the value of the entire

property of such corporation, joint stock company or association or partnership, and the decedent was a nonresident of the State at the time of his death."

By chapter 323 of the Laws of 1916 (§ 83) section 220 was further amended by adding to the class of transfers subject to taxation and immediately following the language just quoted from the Laws of 1915 (a semi-colon following the word " death," instead of a period): " or when the transfer is by will or intestate law of capital invested in business in the State by a non-resident of the State doing business in the State either as principal or partner."

The history of the successive amendments to section 220 shows a consistent policy of adding to the class of transfers made by non-residents which are declared to be subject to tax.   After the amendment of 1915 the transfer of interest of a non-resident decedent in the capital of a partnership business (as well as in the profits thereof) was subject to taxation.

The language whereby this taxability was created was not altered or repealed by the amendment of 1916.   In fact it was re-enacted, and then a new class of taxable property was added, viz., capital invested in business in the State by a non-resident thereof, doing business therein either as principal or partner.

If this amendment simply meant that a tax was imposed on an investment in the capital of the business, nothing was added to existing law, and no reasonable explanation can be found for adding a clause already embraced in existing law.

But treating the amendment as imposing a tax on the transfer of any capital invested by a non-resident in business, whether as a principal or as a partner, the reason for the addition becomes apparent.   It is not the capital of the business, nor the non-resident's investment in the capital of the business, the transfer of which was sought to be taxed, but the capital which he himself invests in the business.   In other words, the taxable transfer is not that of the capital of the business, but of the capital of the non-resident invested in business here.

This construction harmonizes the positions of the partner and the individual.   Since a loan by an individual to himself is a legal impossibility, the transfer of capital invested by an individual in his business would include everything he put into the business whether he characterized it as capital, advances or loans.   No good reason presents itself for holding that a partner should be in a better position, even though the law recognizes the existence of loans by a partner to his firm; nor for holding that a partner should be permitted to escape taxation by calling his contributions loans, when the individual cannot so escape.

That this is the proper construction of the statute was indicated in the decision of this court in *Matter of Green* (192 App. Div. 30). That case involved two questions: *First*, whether or not Hetty Green was engaged in business in New York, and *second*, if so, what was the capital invested in that business. In construing the provisions of chapter 323 of the Laws of 1916, Mr. Justice MERRELL, writing for a unanimous court said (at p. 32): " Manifestly the statute was designed to reach the transfer of property of a deceased non-resident invested in the business of the decedent within this State at the time of decedent's death."

This statement is in accord with the construction here urged. The statute was intended to reach, not the capital of the business, but the transfer of " property of a deceased non-resident invested in the business."

Again (at pp. 36, 37) it was said: " The amendment to the Tax Law in 1916 was undoubtedly made for the purpose of taxing the transfer of property of non-resident decedents invested in business in this State at the time of death." And further (at p. 37) the court said that the statute was quite similar to chapter 37 of the Laws of 1855, and quoted from *People ex rel. Thurber, Whyland Co.* v. *Barker* (141 N. Y. 118) as follows: " It meant, as it seems to us, that the sum invested in any manner in business in this State should be assessed in the same manner and form as a resident would be assessed."

Finally, the court expressly held (at p. 41) that the funds transferred by Hetty Green to the Westminster Company, a corporation organized to assist in carrying on her business, though treated and carried on the books of both parties as loans, were " * * * capital belonging to the decedent at the time of her death, used in her general business of money lending, and was capital invested in her business within the State of New York."

In other words, the court interpreted " capital invested in business in the State by a non-resident" as synonymous with " capital belonging to a non-resident at the time of death used in business," and included in that category loans to a corporation which conducted business in her behalf.

While *Matter of Green* was reversed by the Court of Appeals (231 N. Y. 237) it was upon the ground that decedent in that case was not doing business in this State at the time of her death.

It was said in the opinion of Judge HOGAN (at p. 242): " Under the provision of the statute quoted a non-resident decedent of this State at the time of his death must not only have capital invested in business within the State but concurrently therewith must have been doing business in this State — otherwise the tax

may not be imposed. (*People ex rel. Chicago Junction, etc., Co.* v. *Roberts,* 154 N. Y. 1; *People ex rel. Manila El. R. R. & L. Co.* v. *Knapp,* 229 N. Y. 502.)

" The fundamental question arising on this appeal is: Was decedent doing business in this State at the time of her death? "

While the Court of Appeals answered this question in the negative upon the facts, it nowhere in its opinion indicated any disapproval of the interpretation of the statute by this court.

The conclusion is, therefore, reached that decedent's advances to his firm, whether treated as loans or as contributions to its capital, constituted capital invested in business in the State by a non-resident doing business in the State as partner, and were taxable under the statute.

This renders unnecessary the discussion of the second point urged by appellant that decedent's advances to his firm were to be regarded as loans, though I am of the opinion that under the facts in this case they should not be so regarded, but they were in fact voluntary contributions to the capital of the firm, not required by the articles of copartnership, but not repugnant thereto.

The second ground of appeal is that there was not allowed as a deduction the proportion of the commissions of the executrix on property situated outside of New York which the net New York estate bore to the entire estate, wherever situated. This ruling was erroneous. (*Matter of Browne,* N. Y. L. J. May 25, 1907; affd., 127 App. Div. 941; appeal dismissed by Court of Appeals, 195 N. Y. 522; *Matter of Porter,* 67 Misc. Rep. 19; affd., 148 App. Div. 896; *Matter of LaFarge,* 149 N. Y. Supp. 535.)

The order appealed from should, therefore, be affirmed in so far as it confirmed the tax on the item of $203,360.89, the amount of decedent's interest in the firm of William Salomon & Co.; and it should be reversed in so far as it denies the deduction for a due proportion of the commissions of the executrix and the appraiser's report remitted to him for correction by including in the amount deducted to determine the net taxable estate the proportion of the executrix's commissions at the New York rate on property of the estate situated outside New York which the net value of decedent's property situated at the time of his death in New York bore to the value of his property wherever then situated. Costs and disbursements are allowed to the parties appearing on this appeal payable out of the estate.

CLARKE, P. J., PAGE, GREENBAUM and FINCH, JJ., concur.

Order affirmed in so far as it confirmed the tax on $203,360.89, the amount of decedent's interest in the firm of William Salomon

& Co.; and reversed in so far as it denies the deduction for a due proportion of the commissions of the executrix, and the matter remitted to the Surrogate's Court for further proceedings in accordance with opinion. Costs and disbursements are allowed to the parties appearing on this appeal payable out of the estate. Settle order on notice.