In the Matter of the Estate of ABRAHAM BIJUR, Deceased.

Surrogate's Court, New York County, April 26, 1926.

**Taxation — transfer tax — Tax Law, § 220, subd. 2, par. d (as amd. by Laws of 1922, chap. 430), imposing transfer tax on estate of non-resident predicated on interest in any partnership conducted wholly or partially within State, is constitutional — said interest taxable though intangible — appraiser improperly included as copartnership assets shares of stock carried on books of concern — shares shown not to be part of firm's assets — finding that good will existed as copartnership asset supported by evidence — imposition of tax on good will, though intangible property, does not violate Federal or State Constitutions — appraisal of good will predicated on assumption copartnership would indefinitely continue, error — rule for determining good will — report of appraiser returned for revision.**

Subdivision 2, paragraph (d), of section 220 of the Tax Law (as amd. by Laws of 1922, chap. 430), in force at the time testator died, which imposes a transfer tax upon the estate of a non-resident, predicated on the interest of such decedent in any partnership conducted wholly or partly within the State, to the extent of the interest of said decedent in the partnership property within the State and the good will thereof, is constitutional, notwithstanding the fact that

---

* Now Tax Law, § 220, subd. 4, as amd. and revised by Laws of 1925, chap. 143.— [REP.

decedent's interest in the copartnership constitutes intangible property; therefore, the interest of decedent, a non-resident of this State, in a copartnership doing business within this State is a proper subject of a transfer tax within the meaning of the aforesaid statute.

However, the inclusion by the transfer tax appraiser, as copartnership assets, of shares of stock, carried on the books of the copartnership, was improper, for an entry thereon showed that each partner of the firm was credited with an equal share of the investments when purchased, and so said shares formed no part of the assets of the firm; that they were not assets was shown also by the fact that said stock was never used as capital nor security for loans.

The finding that the good will of the copartnership existed as an asset thereof is supported by the evidence, since it appears that the firm had been engaged in the importation and sale of tobacco since 1908, and since it is conceded by the executors, who object to the appraisal as made, that throughout its existence the partnership had established a reputation which made the firm name valuable in the trade.

Moreover, though good will is intangible property, it was properly taxed herein; said taxation does not violate the provisions of the Federal or State Constitutions.

However, the appraisal of the good will of the partnership, predicated on the assumption that the copartnership was to continue indefinitely, was error, particularly since the copartnership agreement specifically recited that it was to continue until December 31, 1924, unless sooner terminated by the death of two of the copartners.

Under the circumstances of this case, the fairest basis for calculation of the good will is the profits for the years 1920 and 1921, during which years the profits were not abnormal and since the time is not remote from the date of decedent's death.

Good will is computed on net earnings and, therefore, the appraiser properly disregarded income taxes paid to the Federal and State governments.

The report of the appraiser should be returned to him for revision and correction, for the profits of abnormal years were made the basis for the valuation of the good will, and no allowance was made for the loss of the services of the decedent, despite the fact that he was an active member of the copartnership at the time he died.

APPEAL by executors and others from order fixing transfer tax.

*Hirsch, Sherman & Limburg*, for the executors.

*Charles A. Curtin*, for the State Tax Commission.

O'BRIEN, S.   This appeal is taken by the executors, trustees and certain beneficiaries under the will of decedent from the order fixing the transfer tax on the ground: (1) That the taxation of the transfer of decedent's interest in the copartnership of E. Rosenwald & Co. was in violation of the Fourteenth Amendment of the United States Constitution and of the provisions of the Constitution of this State; (2) that shares of stock which formed no part of the assets of the copartnership were erroneously included in the appraisal; (3) that good will did not exist as an element of value in the copartnership; (4) that the imposition of a tax thereon was in violation of the Federal and State Constitutions; (5) that

the decedent had no interest in the good will; (6) that the method of computing it was incorrect.

The decedent was a non-resident of this State. At the date of his death on May 1, 1922, paragraph (d) of subdivision 2 of section 220 of the Tax Law (as amd. by Laws of 1922, chap. 430)* provided that in the estate of a non-resident a tax be imposed on the transfer of " The interest of such decedent in any partnership business conducted, wholly or partly, within the State of New York to the extent of the interest of the decedent in the partnership property within this State and the good will of such business within this State." The contention of the appellants that the above-quoted provision of the Tax Law is in violation of the Federal and State Constitutions is overruled. It must be conceded, as urged by the appellants, that the interest of the decedent in the copartnership constitutes intangible property. The right of a State, however, to subject to taxation the transfer of the intangible property of a non-resident has been upheld by decisions of the courts of this State, and by the Supreme Court of the United States. (*Matter of Romaine*, 127 N. Y. 80; *Matter of Whiting*, 150 id. 27; *Matter of Clinch*, 180 id. 300; *Matter of Daly*, 100 App. Div. 373; affd., 182 N. Y. 524; *Matter of Tiffany*, 143 App. Div. 327; affd., 202 N. Y. 550; *Matter of Blackstone*, 171 id. 682; affd., *sub nom. Blackstone* v. *Miller*, 188 U. S. 189.) In the last cited case Mr. Justice HOLMES delivering the opinion said: " We perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the state at the time of the death. The maxim *mobilia sequuntur personam* has no more truth in the one case than in the other. When logic and the policy of a State conflict with a fiction due to historical tradition, the fiction must give way." The decision of the United States Supreme Court in the case of *Frick* v. *Pennsylvania* (268 U. S. 473) did not overrule *Blackstone* v. *Miller* (*supra*). In the *Frick* case the question involved was the right of the domiciliary State to tax the transfer of *tangible* property located outside the State. (*Matter of Arbib*, 127 Misc. 820; *Matter of Foster*, N. Y. L. J. Oct. 7, 1925.)

(2) The transfer tax appraiser included as copartnership assets shares of stock which are claimed as the individual property of the copartners. It appears that while these shares were carried on the books of the concern, an entry was made showing that each partner of the firm was credited with an equal share of the investments when purchased. I am of the opinion that *the shares formed*

---

* Now Tax Law, § 248, subd. 1, ¶ (c), as added by Laws of 1925, chap. 143.— [REP.

*no part of the assets of the firm.* If they were employed as capital in the business even though they were the property of the individuals, the transfer would be taxable. (*Matter of Henry,* 203 App. Div. 456; mod., 237 N. Y. 204.) An affidavit was submitted, however, by the accountant of the firm, who stated that the stocks were never used as capital or as security for loans. The appeal on this ground is sustained.

(3) The finding of the transfer tax appraiser that good will existed as an asset of the copartnership is amply supported by the evidence, although as we hereinafter hold the value of the good will so far as decedent's interest in it is concerned is materially and seriously affected by several factors in connection with the partnership agreement. However inconsiderable that value may be it cannot be denied that this interest in the good will did exist. The firm was engaged in the importation and sale of leaf tobacco. It had been in business since 1908. It is conceded by the appellants that during its existence the partnership had established a reputation which made the firm name a valuable asset in the trade. This is evidenced by the provision of the copartnership agreement as to the ownership of the firm name. The appeal on this ground is overruled.

(4) Good will is intangible property. The taxation of the transfer thereof, as I have determined (*supra*) with reference to the partnership interest of decedent, does not violate the provisions of the United States or State Constitutions. The appeal on this ground is overruled.

(5) The copartnership was to continue until the 31st day of December, 1924, unless sooner terminated by the death of two of the copartners. The decedent was the first of the copartners to die after the making of the agreement. His interest in the good will passed by his will as a part of his estate, in the absence of a provision in the agreement as to the disposition thereof in the case of the death of one of the copartners prior to the dissolution of the copartnership. The appraiser has valued the good will on the assumption that the copartnership was to continue indefinitely. This was erroneous. Its value should have been appraised with consideration of the fact that the copartnership was not to continue after the 31st day of December, 1924, and might be terminated before that time by the death of another of the copartners. The appraiser took the average annual profits for the years 1917 to 1921, inclusive, as a basis for his calculation of the good will. It is objected that the profits for the years 1917, 1918 and 1919 were abnormal. I think this contention is fully sustained and that the figures for these years should be excluded. (*Matter of Lincoln,* 114 Misc. 45.) The appellants con-

14

tend that the profits of the eleven years immediately preceding decedent's death, excluding the abnormal years, should be taken. While there is much forceful argument to be urged for the fairness of a calculation that will include eleven years as a basis for averaging profits, the essence of the argument is that such a period balances the injustice or unfairness of using the years of most unusual and abnormal profits by including the " lean " with the " fat " years. However, were the contention of appellants to be sustained that eleven years *with the abnormal years excluded* should be taken, the very point and purpose that justifies the use of the longer term or period, viz., eleven years, is ignored. Taking all the circumstances into consideration, it would appear and I so hold that the fairest basis for calculation is the profits of the years 1920 and 1921. The earnings for this period were not abnormal and the time is not remote with reference to the date of decedent's death. In calculating the value of the good will, the appraiser properly disregarded the amount paid to the Federal and State governments for income taxes. The good will is computed on the net earnings. (*Matter of Seaich*, 170 App. Div. 686; affd., 219 N. Y. 634; *Matter of Dupignac*, 123 Misc. 21; affd., 211 App. Div. 862.) Furthermore, the partnership profits are returned as part of the income of the individual and the amount of the taxes varies with the total personal income returned.

It appears that the decedent was an active member of the copartnership and a reasonable allowance for loss of his services should have been made in computing the good will. (*Matter of Borden*, 95 Misc. 443.)

The partnership agreement provided that in the event of the death of this decedent, his personal representatives should be entitled to a definite share of the profits earned by the firm for a period subsequent to his death. These sums together with other payments provided for under the agreement should be added to the value of the decedent's interest after making due allowance and discount from the date of decedent's death to the time of payment.

No evidence was offered as to the actual amount received by the decedent's personal representatives for his interest in the copartnership. While such proof is not conclusive the consideration would afford evidence of value. (*Matter of Herrmann*, 110 Misc. 475.) The report of the transfer tax appraiser is returned to him for revision and correction in accordance with this opinion.