In the Matter of the Estate of WILLIAM A. F. SMITH, Formerly Known as WILLIAM A. F. SCHMIDT, Deceased.

Surrogate's Court, Kings County, June 9, 1930.

*Greene & Hurd* [*Emerson F. Davis* of counsel], for Evelyn R. Smith, individually, and for Evelyn R. Smith and Emerson F. Davis, as executors.

*Harry M. Peyser*, for State Tax Commission.

WINGATE, S. This appeal from a *pro forma* order of this court fixing the transfer tax upon the estate presents two questions.

The first is trite and legally unimportant, but the second makes up in interest what the former lacks, being apparently a point of first impression.

The salient facts are few. Decedent for a considerable period prior to his death had suffered from hernia. On March 10, 1926, he conveyed premises 328 East Seventy-first street, New York city, to his wife, without consideration. On March twenty-sixth he had a further conference with his attorney, at which time he gave directions respecting preparation of a conveyance of his interest in premises 323–331 East Seventy-first street. The widow's affidavit states the facts of that conference to be that: " At that time Mr. Stege suggested to my husband that he should consider the possibility of a conveyance of his property to me. My husband said he had already made a will giving the greater portion of his property to me but that he thought well of Mr. Stege's suggestion and would follow it. My husband then gave instructions to Mr. Bennett to prepare a document which would carry out his desires."

On April 3, 1926, decedent's malady apparently took a distinct turn for the worse, and he had his wife telephone for his physician, and to his attorney to send over the document. When the deed arrived, the wife took it to the decedent in his bedroom, the doctor already being there. The affidavit continues: " * * * as I handed the document to him he said, ' I will sign this right now.' He then did so, the doctor and his sister-in-law acting as witnesses. After the deed had been signed my husband handed it to me with the words, ' This is valuable. Take good care of it because I am giving you everything I have in the world.' "

The affidavit of the physician corroborates the salient facts given, and adds that his examination disclosed " a rather aggravated condition which required attention." A consultation of physicians was had and decedent was advised to go to a hospital, which he did the same day. An operation was performed the next day, but decedent " failed to recover because of the failure of certain organs to function properly and he died in the Hospital on the 8th day of April, 1926," four days after the operation.

Section 220 of the Tax Law imposes a tax upon the transfer of any property real or personal:

" 2. When the transfer is made by deed, grant, bargain, sale or gift made in comtemplation of the death of the grantor, vendor or donor * * * *." (Tax Law, § 220, subd. 2, as amd. by Laws of 1928, chap. 330.)

Section 230 of the Tax Law (as amd. by Laws of 1928, chap. 549) reads in part: " Any transfer of his property made by a decedent by deed, sale or gift within two years prior to his death,

without a valid and adequate consideration therefor, shall be presumed to have been made in contemplation of death within the meaning of this chapter."

The result of these two provisions is that a demonstration of a transfer of property, without consideration, within two years of death makes a *prima facie* showing of taxability, and throws upon the donee the burden of presenting evidence to counterbalance this *prima facie* case.

In the opinion of the court, the appellant has utterly failed to meet this burden. She argues that an operation for hernia is a minor one. This is usually so in a normal individual, but the fact is demonstrated by the result, that it was not minor in the case of this decedent. The mere fact that he had apparently for years tolerated the inconvenience and pain attendant upon such a condition would seem to indicate that the decedent knew that so far as he was concerned, the matter was serious. He is represented as being a man of fifty-two, actively engaged in business. Is it reasonable for such a man to divest himself of all of his property by voluntary conveyance without some adequate reason? No reason is advanced, other than the ailment from which he was suffering and which was so soon to cause his death. Indeed, the appellant demonstrates by the portion of her affidavit first quoted that the motive inducing the action was to provide more adequately for his wife than he had already done by will. This was obviously an act intended for her welfare after his death and, therefore, done in contemplation of his death.

In the opinion of the court, the language of the Appellate Division, Second Department, in *Matter of Bolton* (228 App. Div. 834) is particularly pertinent: " Having in mind the decedent's critical condition and the surrounding facts and circumstances, * * * we are of opinion that the presumption created by section 230 of the Tax Law, as amended by chapter 657, Laws of 1924, which provides that the transfer of property within two years of death is presumptive evidence that it was made in contemplation of death, was not overcome by the proof in this case."

The first, second, third and fourth grounds of appeal are, therefore, overruled.

There remains for consideration the contention that the appraiser erred in failing to take into account in the determination of the tax on these properties transferred in contemplation of death, the debts and administration expenses of the estate. This question appears never previously to have been adjudicated in its present form.

It is evident that the statement made by the decedent at the time

of the second gratuitous transfer to his wife, that he was giving her everything he had in the world, was substantially correct, since the report of the appraiser herein shows the condition of the estate at his death to have been cash, $2,132.16; personal effects, $125; notes, etc., $1,585, and insurance $1,026.79, making a total of assets of $4,868.95, while the liabilities of the estate amounted to funeral and administration expenses, $1,346.14; debts, $48,068.71, and commissions of executors, $171.72, or a total of $49,586.57. In other words, the appraiser found that the estate was insolvent by $44,717.62. The question presented is whether this sum or any portion of it should be set off in the computation of the transfer tax against the aggregate value of the properties transferred in contemplation of death, which totaled $59,548 in value.

This question may be approached from two different angles, *first*, from a construction of the Tax Law itself, and, *second*, from a consideration of the legal effect of these transfers in relation to the creditors of the decedent.

It is, of course, fundamental that in the ordinary determination of the transfer tax payable, the valid obligations of the estate must first be deducted from its assets and the tax assessed only on the basis of the clear equity thus shown. (*Matter of Westurn*, 152 N. Y. 93, 102; *Matter of Vanderbilt*, 187 App. Div. 716; affd., 228 N. Y. 517; *Matter of Hazard*, Id. 26.) In the last cited case the court says (at p. 29): " In ascertaining the value of the estate for the purpose of the transfer tax, debts owing by the deceased are to be deducted. * * * The tax is upon that property only passing to the persons mentioned in the statute."

Under the Tax Law as it existed prior to the amendment effected by chapter 664 of the Laws of 1915, a distinction was apparently drawn between the various classes of taxable transfers enumerated in section 220. This was made evident by the determination of the Court of Appeals in *Matter of Hodges* (215 N. Y. 447), which held that where a testator left a legacy to his widow under his will and also transferred certain bonds to her in contemplation of death, she was under section 221-a as then existing (Laws of 1911, chap. 732), entitled to her statutory exemption on both. This was promptly remedied by the Legislature and the language of section 221-a was changed from " upon a transfer taxable under this article " to " upon all transfers taxable under this article." As a result it has since that time been held with general uniformity that in the calculation of the transfer tax payable, the net value of the assets received in any of the modes specified in section 220 should be totaled and the exemption of the transferee deducted from the aggregate of the items (*Matter of Garcia*, 183 App. Div. 712;

*Matter of Wintjen,* 99 Misc. 471; *Matter of Furnald,* 187 N. Y. Supp. 921; *Matter of Horler,* 180 App. Div. 608, 615), provided the gifts became effective at approximately the same time. (Cf. *Matter of Leggett,* 128 Misc. 306.)

While this question is by no means four-square with the present problem, it is analogous, since if the different types of transfers taxable under section 220 are to be taken together in the calculation of the exemption deduction, no good reason is perceived for refusing to consider them similarly when the question relates to deductions for debts or expenses which are payable out of the total beneficial interest which passes to the legatee and donee. An analogous result was reached in the learned opinion of Deputy Tax Commissioner Cole in *Matter of the Computation of the Transfer Tax on Trust Funds Deposited in Savings Banks in Relation to Deductibility of Debts and Funeral Expenses,* reported in volume 33 of New York State Department Reports, at page 22. There the question related to the tax assessable against a savings bank trust which constituted substantially the entire property of a decedent.

The particular point passed upon was whether the tax to the *cestui que trust* should be based upon the bank account, less the amount of the decedent's funeral expenses, or upon the entire face of the account. The conclusion of the learned Deputy Commissioner is stated (at p. 26) : " * * * the beneficiary in question should be subjected to a transfer tax on only that portion of the trust account which remains after the deduction of amounts actually paid or actually to be paid to the creditors of the decedent on account of his debts and funeral expenses, it being understood that the opinion is limited to a case in which the decedent owned no property aside from the trust account or where the other property of the decedent is insufficient to pay his debts and funeral expenses, in which event the amount thereof in excess of the property in his estate would become a charge against the trust fund."

The principle involved in this opinion is closely analogous to that presented in the case at bar, provided the property gratuitously transferred to the wife was subject to the claims of decedent's creditors as the savings bank trust deposit was there held to be.

On the question of the rights of creditors in respect to the property so conveyed, our statutes are explicit. Section 273 of the Debtor and Creditor Law (added by Laws of 1925, chap. 254) provides: " Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Section 278 (added by Laws of 1925, chap. 254) reads: " 1. Where

a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

" a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

" b. Disregard the conveyance and attach or levy execution upon the property conveyed."

Section 268 of the Real Property Law grants to an executor or creditor the right to disaffirm and treat as void any such transfer and have the property applied on any obligations of the decedent.

It follows that in the instant case the properties gratuitously conveyed to the wife were subject to the debts of the estate in precisely the same manner as was held by the Deputy Tax Commissioner in the savings bank trust. As a practical matter, she received such properties subject to a statutory lien for such of the obligations of the estate as could not be paid from purely estate funds, with like effect as if the decedent before transferring them to her had mortgaged them to the holders of the claims against the estate for the sums which the estate was unable to pay.

The affidavit of Evelyn R. Smith and Emerson F. Davis, verified February 15, 1930, recites that the wife having been advised by her attorneys as to her obligation to pay the excess debts of the estate from the properties transferred to her, " thereupon borrowed money, secured by bonds and mortgages upon the real property so transferred, in sums which, added to the assets of the estate, were sufficient to discharge and pay all debts of the decedent and the funeral and administration expenses. The funeral and administration expenses and all debts, as listed in Schedules ' L ' and ' M,' have been paid in full from the funds so made available by the deponent Evelyn R. Smith."

It is, therefore, apparent that the widow has actually, by voluntary act, placed incumbrances for satisfaction of decedent's debts upon the property which she received, in a sum equivalent to that by which the law impressed a lien upon the real estate transferred to her. Her beneficial interest in the property received from the decedent was, therefore, not the full value of such properties, but such value after deducting the part of the debts and administration expenses which could not be paid from the funds of the estate. The appraiser erred in failing to allow such deductions and the fifth and sixth grounds of appeal are, therefore, sustained.

Since all of the facts are before the court, the matter need not be remitted to the appraiser.

The court finds and determines that the total liabilities of the estate which could not be paid from its assets amounted to $44,717.62 and that this was a lien upon and a proper deduction from the value of $59,548 of the property gratuitously conveyed by the decedent, leaving a net equity therein of $14,830.38. From this sum the widow is entitled to a deduction for her statutory exemption of $5,000, leaving a net balance of $9,830.38, which is taxable at one per cent.

Enter order, on notice, accordingly.