### In the Matter of Estate of DANIEL JONES, Deceased.

Surrogate's Court, Kings County, January 22, 1931.

*Joseph A. Seidman*, for the executrix.

*Harry M. Peyser*, for the State Tax Commission.

WINGATE, S. The questions here presented for decision arise upon an appeal from the report of the transfer tax appraiser, filed herein on the 23d day of November, 1929, the amended report, filed February 4, 1930, and the *pro forma* order of taxation entered thereon.

The bases of the appeal are twofold, challenging *first*, the valuation placed by the appraiser upon the business of the deceased, and *second*, the determination that certain transfers of real and personal property, made by the decedent to his wife approximately a year prior to his death, were in contemplation of death and are, therefore, taxable.

The record demonstrates that for a period of about thirty years prior to his decease the testator carried on a furniture business in New York city. This enterprise was conducted by him as an individual, and was not organized in either the corporate or partnership form. It apparently started on an extremely modest scale in a basement, but as a result of careful management and the co-operation of the wife and other members of the family, expanded into a sizeable enterprise. It was also made to appear that the profits of this business, particularly during the later years of

decedent's life, resulted in no small degree from the strong cash position into which the decedent was able to work himself, which permitted him to take advantage of diverse discounts and to sell at a proportionately lower figure than his competitors.

The testator died on April 18, 1927, and the will was admitted to probate and letters testamentary were issued thereon on the twenty-fourth of May following. On June 20, 1927, an order was made by this court in a proceeding instituted under section 215 of the Surrogate's Court Act, authorizing the sale of the business for the sum of $125,000, and the assumption by the purchaser of various obligations of the estate.

The appellants herein insist that the permissive order then granted inevitably determined the value of that property in a manner binding upon the transfer tax appraiser. In this respect they err. The effect of the determination is clearly stated in the final sentence of section 215 of the Surrogate's Court Act, which reads: " A substantial compliance with the authorization so given shall relieve the said executor, administrator or testamentary trustee from any charge or objection that the said estate or persons interested suffered a loss on account of the time or manner of sale or the price realized." This is, of course, an entirely different matter from a determination that the price so realized was the fair value of the property sold, at the time of the death, as of which date the transfer tax is assessable. (*Matter of Davis*, 149 N. Y. 539; *Matter of Penfold*, 216 id. 163.) Were the contention of the executor correct, it would obviously follow that such an authorization and sale, no matter when made, would have a like effect, with the result that if the property had depreciated to the extent of nine-tenths of its original value without the fault of the testamentary fiduciary, between the time of death and the time of such determination, the State would be unable to assess a tax on the value of the property as it passed from the testator on his death as contemplated in section 220 of the Tax Law, as amended.

Whereas, however, the contention of the appellants in the form presented is untenable, it is, nevertheless, unquestionable that the value of a given property of the decedent as determined by an actual sale thereof within a reasonable length of time subsequent to the decease, is entitled to great, and in some cases, substantially conclusive weight. (*Matter of Bijur*, 127 Misc. 206, 210.)

This general principle is recognized in the provisions of section 122 of the Decedent Estate Law (renum. by Laws of 1909, chap. 240), although that section applies strictly only to property having an open market value.

In the usual case it is extemely difficult in the absence of an

actual sale of property such as a going business, to determine its actual worth, in view of the many elements entering into the computation of such value. Such a determination involves not merely items of tangible property such as merchandise, fixtures, etc., but accounts receivable, which may or may not be ultimately collectible, and most difficult of all, the intangible element of good will, the correct appraisement of which has been the cause of a vast amount of litigation. In such cases where the business is a strictly personal enterprise as in the present instance, the placing of a definite figure upon the value of the good will can at best be little more than the roughest sort of a guess. Profits realized during the lifetime of the one conducting the business can almost never furnish any accurate criterion for determination, since the extent to which the personality of the decedent entered into their acquisition is at best little more than a matter of conjecture.

It follows, therefore, that where an actual sale of the business has occurred within a comparatively short space of time following the decease, the value ascertained by such sale is a much safer basis for determining its actual worth than any theoretical calculation would be, in the absence of a demonstration that a material change has occurred in connection with the matter between the time of the decease and the time of the sale.

This general principle was recognized by the Court of Appeals in *Matter of Westurn* (152 N. Y. 93) where (at p. 102) the court indicated that appraisement of the value of a note in litigation should be postponed until the liability of its maker could be determined.

In *Matter of Arnold* (114 App. Div. 244) the court held that an appraisal of real property at $2,860 was improper and unjust, where, within a reasonable time after the death, the particular realty had brought only $1,600 on sale after diligent though unsuccessful efforts to sell at a higher price.

The precise question here presented came before Surrogate FOLEY of New York county in *Matter of Herrmann* (110 Misc. 475). In that case it appeared that a sale of decedent's interest in a business had occurred about seven months after his death. The determination made was that the value of decedent's interest in the business as indicated by such sale, must prevail over any estimate thereof based upon usual theoretical rules of computation. The clear exposition of the basic principle applicable is given as follows (on p. 479) · " The rules laid down in the various decisions for the valuation of good will cannot be applied where there is an actual sale made in good faith.

" The imposition of a tax upon this non-existent item is unjust to the estate and not in accord with the provisions of the Tax Law.

" There is no more speculative or intangible subject of valuation than good will. It is difficult to fix from its very nature. Its value consists of three elements — net profits, capital and number of years' purchase. The fluctuating profits of a business for a period of years must be considered in determining what is a fair average and the length of that period is also to be determined in each particular case. Finally, the number of years' purchase must be considered. This sale had taken place before .the appraisal was made. It was error, therefore, for the appraiser to use his estimate of this speculative element as against the real market value of the good will under the test of a fair and open sale. While it is the value of decedent's interest at the date of his death that is subject to the transfer tax (*Matter of Davis*, 149 N. Y. 539; *Matter of Penfold*, 216 id. 163), there was no proof before the appraiser that the value of that interest at his death exceeded the price realized upon the sale."

In the case at bar the applicability of the rule thus enunciated would seem even more obvious, if possible, than in the *Hermann* case, by reason of the fact that there the sale took place at a time much closer to the date of death, almost two months to a day after the decease. In the case at bar, as in the *Hermann* case, there was an utter absence of any showing of any change in value during the interval.

In the opinion of the court, therefore, the appraiser erred in placing a value upon the business in excess of the purchase price thereof, namely, $125,000.

Counsel for the State .Tax Commission in his brief attempts to demonstrate that the purchase price actually paid pursuant to the contract of sale was in excess of this sum by reason of the assumption by the purchaser of certain obligations of the estate. Since, however, these obligations were not claimed as deductions on the transfer tax proceeding from the net assets at death, it is obvious that to the extent, if any, by which the purchase price, and thus the gross receipts from the sale exceeded $125,000, the deductible liabilities of the estate were decreased by the same figure. As a consequence, the net result is the same as if the purchase price had been put at a higher figure and deduction had been made in the other schedules for the actual amount of the debts assumed. In either event, the tax would be based upon a figure which was too high to the extent of $73,351.29.

Turning now to the second ground of appeal, namely, that the transfers to the wife which were made in 1926 were improperly determined to have been made in contemplation of death, we find a serious conflict, respecting the surrounding situation and the facts pertinent to a decision.

It appears that the decedent made a deed of the family residence to his wife on March 4, 1926, but that this was not recorded until July 13, 1926, and further, that on July 21, 1926, a transfer was made of certain stock, which is the other item of gift. It will be recalled that the decedent died on April 18, 1927, or less than nine months after the latter transaction.

Affidavits submitted on the various proceedings and the testimony taken before the appraiser indicate that the decedent died from diabetes with which ailment he had been suffering for about thirty years. On page 4 of the testimony before the appraiser the widow testified that the decedent had been at Doctor Allen's Sanitarium, Morristown, N. J., for periods of six and four months, inferentially about eight months prior to the time that he made the trip to Florida on which he died, and that he was under the care of physicians for about two years prior to his death.

The affidavit of Milton Jones, a son, dated April 17, 1929, reads in part as follows: " My father was not for several years in physical condition to be very active in the business. When my said brother died, the business was conducted by my father and mother until my father became ill. For two or three years prior to my father's death he was so ill that neither he nor my mother were able to take full charge of the retail furniture business; he, because of his illness, and my mother because of the fact that most of her time was devoted to take care of my said father, so that the business had to be left in charge of William Jones and Zelig Jones."

The widow's testimony contains certain statements which may be construed both as conflicting with and corroborating the testimony just noted, as a result of which, the best that can be said for the appellants' case in this direction is that the testimony was conflicting and the issue in doubt.

In this situation the applicable provisions of section 230 of the Tax Law (as amd. by Laws of 1925, chap. 144) become of importance. It is therein provided: " Any transfer of his property made by a decedent by deed, sale or gift within two years prior to his death, without a valid and adequate consideration therefor, shall be presumed to have been made in contemplation of death within the meaning of this chapter." It must follow from the natural interpretation of this language that, in the absence of proof sufficient to rebut the presumption, the decision should favor a holding that the property was transferred in contemplation of death and is, therefore, taxable. (*Matter of Bolton*, 228 App. Div. 834; *Matter of Smith*, 137 Misc. 107, 109.)

As noted in the recent opinion of this court in *Matter of Dunne*

(138 Misc. 840) the action of the appraiser is a semi-judicial one, in consequence of which a court of review is properly loathe to set aside the findings of the trier of the facts who has had the advantage of seeing and hearing the witnesses themselves. (*Matter of McNamara*, 138 Misc. 526, and cases cited.)

In addition to the considerations hereinbefore noted which would, in any event, incline the court to an affirmance of the determination by the appraiser on this branch of the case, there is the fact that the deed to the house given by the decedent to his wife was executed in March and was not recorded for more than four months later, at which time, according to the testimony of the donee herself, the physical condition of the testator had again taken a turn for the worse. It is reasonably deducible from the testimony that at about the time of the execution of the deed the decedent was quite ill and confined in a sanitarium; that he then improved, only to have a relapse once more, approximately four months later, at which time the instrument was presented for record.

The appellants cite *Matter of Beyer* (190 App. Div. 802) as a determination that a pre-existing moral obligation amounts to such " a valid and adequate consideration " within the provisions of section 230 as to take the present transaction out of the terms of the statute. The answer to this position is twofold, *first*, that *Matter of Beyer* determined no such thing, the actual decision of the court at the bottom of page 805 being: " that this transfer was made in contemplation of death is not borne out by the evidence."

The *second* answer is found in subsection 2 of section 220 of the Tax Law (as amd. by Laws of 1925, chap. 143) which defines the consideration apparently intended in the provision of section 230 as a " valuable consideration." On basic principles, a moral consideration such as was disclosed in *Matter of Beyer* or has been attempted to be shown in the present case by virtue of the joint labors of the donee with the decedent in the furniture business, is not " a valuable consideration " which will take the case out of the operation of the Tax Law. (See *Matter of Gould*, 156 N. Y. 423, 426 *et seq.*) It follows that the appeal from this portion of the determination of the appraiser must be overruled.

The order fixing tax will be reversed and the appraiser's report remitted to him for further proceedings in accordance with this opinion.

Proceed accordingly.