In the Matter of the Estate of GEORGE W. MATTICE, Deceased.

Surrogate's Court, Delaware County, April 3, 1933.

*Govern. & McClenthen,* for Bertha Babcock Mattice, executrix.

*Ives & Craft,* for Diana Ten Eyck, contestant.

O'CONNOR, S. George W. Mattice died on June 22, 1932, leaving a last will and testament dated December 19, 1930, in which Bertha Babcock Mattice, the proponent, was named as executrix. The will was filed in the surrogate's office of Delaware county and a citation was duly issued returnable September 3, 1932. On the return of this citation, Diana Ten Eyck appeared and filed objections to the will, claiming that she was the common-law wife of the decedent, George W. Mattice.

These preliminary proceedings have been had for the purpose of determining whether or not Diana Ten Eyck had a right to contest the probate of the will, and the sole question to be determined is whether or not she was the common-law wife of the decedent. If she is, she has a right to contest; if she is not, she has no such right.

It is undisputed that for a period of over twenty years the decedent and contestant lived together in a brick house situate on Railroad avenue in the village of Stamford, county of Delaware and State of New York; that in 1925 they had a quarrel; the contestant left the decedent and went to live with her mother across the road from the residence of the deceased and never lived or cohabited with him after that; that on the 17th day of October, 1930, the decedent and Bertha Babcock, proponent, were duly united in marriage by Rev. Grant L. Rice, a minister of the gospel at Cobleskill, N. Y.; that after their marriage they continued to live together as husband and wife in the brick house owned by the decedent, across the street from contestant, until his death; that the decedent was a white man and the contestant is a negress.

It is not necessary for the purpose of this decision to review the evidence in detail. Suffice to say the evidence on the part of the contestant consisted of the testimony of quite a number of witnesses who had visited in the home of the decedent and heard the decedent call the contestant his wife. On two occasions a mortgage was executed by the decedent in which the contestant joined; one dated July 6, 1907, was signed and acknowledged by the decedent, George W. Mattice, and Diana Mattice, his wife. The other mortgage, dated July 2, 1908, was signed and acknowledged by the said George W. Mattice and Diana Mattice. The contestant was not described in this mortgage as the wife of the decedent. The contestant took out licenses to operate an automobile from 1924 to 1928 and these licenses were issued to her in the name of " Mrs. George Mattice," and during that time she received some letters from some of her friends addressed to " Mrs. George Mattice." Some receipts and bills were also made out and delivered to her under the name of " Mrs. George Mattice " by some of the business people in the village of Stamford.

On behalf of the proponent, some of the witnesses testified that the decedent had stated that he was not married to the contestant. In the year 1925 the decedent filed an application for a pension as a veteran of the Spanish-American war in which he stated that he was not married and never had been. All the witnesses interrogated in relation thereto testified that the deceased and contestant had never attended any public or social function together. A year

or two after her separation from the deceased and right up to his death, the contestant lived with one Edward Chase, under somewhat similar conditions as those under which she lived with the deceased, and represented herself to be the wife of said Edward Chase. In 1927 suit was brought against her in the name of "Anna Chase sometimes known as Anna Mattice," and she verified the answer in that action under the name of Anna Chase, and in 1929 she commenced an action in the Supreme Court of Delaware county and verified the complaint under the name of Anna Chase. After 1928 her licenses to operate an automobile were taken out by her in her maiden name, Diana Ten Eyck. In June, 1931, she inserted an advertisement in the Stamford *Mirror Recorder*, a newspaper published in the village of Stamford, where she then lived, over the name of Mrs. Edward Chase, and in the spring of 1932 she and said Edward Chase entered into a contract for the purchase of a house and lot in the village of Stamford and she signed her name to the contract as Mrs. Anna Chase.

Her own testimony, while necessarily limited under the provisions of section 347 of the Civil Practice Act, was very unreliable and she frequently contradicted herself. This, coupled with her conduct in her attempt to obtain the automobile of the decedent, and her conduct after her separation from decedent, weakens her case, as "in cases of this kind the character of the parties to the alleged marriage is of much importance." (*Matter of Eichler*, 84 Misc. 672, 673; *Chamberlain* v. *Chamberlain*, 71 N. Y. 423; *Matter of Brush*, 25 App. Div. 610.)

In the opinion of the court the contestant has not established a common-law marriage with the decedent. While it is true that intermarriage between the white and colored races is more or less common, they are not yet viewed with favor or complacency by society in general. There is no doubt that the decedent and contestant had and manifested mutual love and affection for each other. From 1902 to 1908 their relationship under the law was that of man and mistress as a common-law marriage was not recognized in the State of New York during that period. The decedent denied any ceremonial marriage and no effort was made by the contestant to establish such a marriage. The decedent married the proponent in 1930 and if he was the husband of the contestant by reason of a common-law marriage, he committed the crime of bigamy. If the contestant also contracted a common-law marriage with Edward Chase prior to the death of the decedent, she also would be guilty of bigamy, morally if not legally.

Under these circumstances it is difficult to believe that the decedent and contestant considered themselves actually married to

each other. Each, soon after their separation, entered into a marriage contract with a third party; the decedent by having a marriage ceremony performed by a minister of the gospel and the contestant by living with another man and assuming his name. This conduct on the part of the respective parties is inconsistent with the claim of the contestant that she had contracted a common-law marriage with the decedent. If the decedent had not married and the contestant had continued to hold herself out as his wife, it would not necessarily have so materially affected the claim of the contestant, but when she, soon after her separation from the decedent, assumed her maiden name and within a comparatively short time commenced living with Edward Chase and held herself out to be his wife by executing papers and using the name of Anna Chase, it certainly is a strong circumstance against her claim that she and decedent were husband and wife. (*Newton* v. *Southworth,* 7 N. Y. St. Repr. 130.)

Surrogate O'BRIEN in *Matter of Erlanger* (145 Misc. 1) has very ably and exhaustively compiled and digested the decisions in this State upon the question of common-law marriage and has there stated very clearly and concisely the law applicable thereto.

However, this court finds it impossible to reconcile the various decisions in this State and, after a careful reading of them, is of the opinion that the courts have, in many instances, decided for or against common-law marriage according to the equities of each particular case. Where the question of legitimacy is in issue, not very much evidence other than the birth of issue to the parties is required. On the other hand, where there is no issue of the marriage, as in this case, and a decision that common-law marriage existed would result in establishing that one or both parties was guilty of a crime, the courts are strongly inclined to hold that no common-law marriage exists. (*Foster* v. *Hawley*, 8 Hun, 68; *Matter of Eichler*, 84 Misc. 667.)

In this case there is no direct evidence that there was an agreement entered into between the parties at any time to take each other as husband and wife with the resulting obligations. The court is asked to assume that such an agreement was entered into by reason of the parties having lived together for a period of over twenty years and the declarations by the decedent that contestant was his wife. However, there is no evidence as to the exact time when the parties commenced living together. The evidence is that they separated in 1925 and that they had lived together for over twenty years prior to that time. Between 1902 and 1908 common-law marriages were not recognized in the State of New York and, therefore, the cohabitation between these parties was apparently

illicit in its origin and the presumption is that it so continued until a change in its character is shown by acts and circumstances that the connection has been matrimonial. We are perfectly aware of those cases which hold that where the parties, even though their cohabitation was illicit in its origin, continue to live together and agree to assume the relation of man and wife, a court is warranted in finding a common-law marriage. But the presumption is that being illicit in its origin it so continues unless the contrary is affirmatively shown by very strong, positive and convincing evidence. (*Gaul* v. *Gaul*, 114 N. Y. 109; *Matter of Eichler*, 84 Misc. 667, at p. 672.)

To constitute a common-law marriage there must be an agreement between the parties, a present consent, *per verba de præsenti*, to take each other as husband and wife, to enter into a relation which was to continue *until death did them part*, with the resulting obligations of husband and wife. This consent is of itself sufficient, but there is no substitute or equivalent. (*Graham* v. *Graham*, 211 App. Div. 580, at p. 583, and cases there cited.) " In the absence of this intention and agreement, the fact of their sexual relations, that they have lived together, that they used the same name, that they were regarded as husband and wife, do not supply the deficiency." (Id.)

Here one of the parties is dead and clear, consistent and convincing evidence is required to establish the marriage under such circumstances. (*Boyd* v. *Boyd*, 252 N. Y. 422, at p. 428.) In the opinion of the court such evidence is lacking in view of the subsequent conduct of the parties.

The fact that the decedent and contestant executed the mortgages on real estate in one of which they styled themselves as husband and wife, and in the other they simply joined as parties without designating themselves as husband and wife, is entitled to considerable weight, but it is not conclusive evidence of a common-law marriage. (*Matter of Eichler, supra*, 672.)

On all the evidence in this case, this court holds that the contestant has failed to establish a common-law marriage between herself and the decedent, and, therefore, has no right to contest the probate of the will of decedent as she is not an interested party. A decree may be entered accordingly.