In the Matter of the Estate of MARGARET C. REILLY, Also Known as MARGIE C. REILLY and MARGIE REILLY, Deceased.

Surrogate's Court, Kings County, December 10, 1937.

*Oscar Habas* [*George A. Logan* of counsel], for the petitioner Elizabeth Conklin, sister of decedent.

*Thomas J. Diviney*, attorney *pro se*, as executor of Thomas F. Madden, deceased, alleged husband of decedent.

WINGATE, S. The facts in this proceeding are quite unusual, although certain legal principles involved appear to possess increasing interest. Margaret C. Reilly died on March 20, 1937, intestate. Three days later, Elizabeth Conklin verified a petition for letters of administration alleging that she was a sister of the half blood

and that the only other statutory distributees of the decedent were certain specified nieces and nephews, grandnieces and grandnephews and " that said decedent left her surviving no husband." She further asserted that the only property of the decedent consisted of personalty, " the value of which did not exceed the sum of $7,000," and a parcel of real estate, " the value of which does not exceed $3,700," and prayed that letters be issued to her and to James P. Reilly, one of the nephews.

Thomas F. Madden thereupon intervened in the proceeding and alleged that he was a husband of the deceased and requested that letters be granted to him. The issues raised by these contradictory claims were duly tried before a referee who, on October first, filed his report in which he found that Thomas F. Madden was the surviving husband of the deceased " and is entitled, as such, to share in her estate and is entitled to letters of administration."

A notice of motion, returnable on October eighteenth, seeking a confirmation of the report of the referee, was served on October eleventh. Thomas F. Madden died on October fifteenth. His will was duly admitted to probate in this court on October twenty-first, and letters testamentary thereunder issued to Thomas J. Diviney. This executor has now intervened in the proceeding and has moved for a confirmation of the report of the referee and for the issuance of letters of administration to him.

His motion is opposed on four stated grounds, *first*, that by reason of the death of Madden the proceeding for confirmation of the referee's report has abated; *second*, that Madden's executor is not entitled, within the contemplation of section 118 of the Surrogate's Court Act, to take " all " the personal estate of the decedent, which, it is alleged, aggregates $17,000; *third*, that the determination by the referee of the rights of Madden was erroneous in fact and in law; and, *fourth*, that Madden's claim was partially substantiated by the testimony of Dorothy Tyson, who, while competent at the date of the hearing, would, it is asserted, now be precluded from testifying, as she is a legatee under Madden's will.

The third objection will first be considered. The referee has carefully and ably reviewed the evidence in the case, which demonstrates that the decedent and Madden had been friends and associates for many years; that at first they represented themselves to acquaintances as unmarried, but after May, 1926, stated that they had been married and later associated together in the apparent relation of husband and wife. They purchased property in Mineola under a contract, signed by both, by the terms of which the vendees were " Thomas Madden and his wife, Mrs. Madden." Title was

ultimately conveyed to the decedent alone under the name of Margaret Madden. Decedent and Madden acted as sponsors and godparents of the child of a friend, and the church records indicate that the decedent's name was given as Margaret C. Madden. This testimony, if credited by the referee, is sufficient to justify his conclusion. (*Gall* v. *Gall*, 114 N. Y. 109, 118; *Caujolle* v. *Ferris*, 23 id. 90, 106; *Tracy* v. *Frey*, 95 App. Div. 579, 583; *Matter of Biersack*, 96 Misc. 161, 178; affd., 179 App. Div. 916; *Ellis* v. *Kelsey*, 118 Misc. 763, 767, 768; affd., 208 App. Div. 774; 214 id. 784; affd., as to this point, 241 N. Y. 374; *Matter of Leslie*, 175 App. Div. 108, 111; *Matter of Smith*, 136 Misc. 863, 867.) He did credit it, and, since he had the opportunity of observing the witness, a reviewing authority, which did not enjoy that privilege, should be hesitant to attain a differing result. (*Matter of Arkenburgh*, 38 App. Div. 473, 478; *Baumann* v. *City of New York*, 180 id. 498, 500; modfd. on other grounds, 227 N. Y. 25; *Jankowski* v. *Azaro*, 246 App. Div. 557; *Union Dime Savings Inst.* v. *Osley*, 4 Hun, 657; *Matter of Jones*, 139 Misc. 31, 37; *Matter of Rich*, 151 id. 852, 856; *Matter of Dreyer*, 153 id. 624, 625; *Matter of Greenberg*, 158 id. 446, 449.)

As against the positive evidence noted, the negative testimony of acquaintances who did not know of the marriage is entitled to scant consideration, and the declarations of the decedent, made in Madden's absence, and presumably for the supposed better protection of her employment, while admissible, are entitled to be accorded little comparative weight. (*Washington* v. *Bank for Savings*, 171 N. Y. 166, 175; *Farmers Loan & Trust Co.* v. *Wagstaff*, 194 App. Div. 757, 760, 761; *Matter of Callahan*, 142 Misc. 28, 29; affd., 236 App. Div. 814; affd., 262 N. Y. 524.)

It follows that the evidence adduced before the referee, as the fact-finding agency of the court, has established with reasonable certainty that at the time of her death she *did* leave a husband her surviving, wherefore the petition of her sister for administration, which initiated the presently-pending proceeding, contained a false allegation of a material fact.

This leads naturally to a consideration of the first, hereinbefore enumerated, objection of the petitioner to the present motion of the executor of the husband, to the effect that the proceeding had abated. This objection obviously demonstrates a failure of comprehension of the nature of the pending proceeding, which is by the sister for a grant of administration to her. To authorize the issuance of any such letters the applicant must make an affirmative demonstration of prior right within one of the subdivisions of section 118 of the Surrogate's Court Act. Unlike a purely personal

action in a court of general jurisdiction, which seeks merely a recovery against some other individual, such a petitioner seeks from the surrogate a judgment *in rem* awarding her the title to, and possession of, specified assets which have in essence come into *custodia legis* by reason of the death of their former owner. The fact that such title and possession, if established, are fiduciary only, and not beneficial, does not alter the situation that the proceeding is essentially one for the award of a *rem* to the petitioner.

To become entitled to such a judgment, the court must be satisfied of her statutory rights to such relief and an affirmative adjudication thereof is permissible only upon a satisfactory demonstration of specified pertinent facts and in accordance with the allegations of the petition purporting to demonstrate the statutory bases of that right. Even when such an application is wholly *ex parte* and unopposed the court may and occasionally does require a demonstration transcending mere unsupported allegation before granting the award which is sought, if it has any reason to doubt the validity of the asserted bases thereof. (*Matter of Murphy*, 141 Misc. 272, 273. Cf. *Matter of Gant*, 142 Misc. 446, 451.) Properly viewed, therefore, the trial before the referee was merely one for a determination of fact as to whether or not the petitioner was entitled to the relief which she sought from the court, and the testimony of Dorothy Tyson was addressed only to that issue.

If the court may decline to grant letters until satisfied of the actuality of the asserted bases of the claim therefor, it follows as an *a fortiori* matter that it must deny them where facts of which it may or should take judicial notice affirmatively demonstrate that the grounds upon which the assertion of the right are predicated are untrue. Such is the present situation. The petition of the half-sister, which is the only one now before the court, asserts a prior right to letters by reason of the alleged fact that the decedent died leaving no husband her surviving. The record adduced in this court in this very case, of which the court may take judicial notice (*Matter of Surpless*, 143 Misc. 48, 50; *Matter of Morningstar*, Id. 620, 623; *Matter of Blake*, 146 id. 780, 781, 782; *Matter of Goldowitz*, 153 id. 182, 184; *Matter of Greenberg*, 158 id. 446, 448), demonstrates the falsity of this essential allegation. It follows, as a matter of law, that the petitioner is entitled to no relief upon her present petition, and, so far as the proceeding thus initiated is concerned, the relief must be denied. This disposes of the first and fourth enumerated objections of the petitioner. The proceeding did not abate because it was one initiated by the petitioner herself for a determination that, because of certain stated facts,

she possessed a right *in rem* against the personal assets of the estate. The testimony of Dorothy Tyson is not incompetent since it merely negatived that claim.

The question, therefore, becomes pertinent as to whether there is any other applicant before the court to whom letters upon the estate should properly issue. The executor of the deceased asserts such right on the basis of the second full paragraph of section 118 of the Surrogate's Court Act, which reads: " If a person entitled to take all the personal estate is an infant, or an incompetent, or has died, his guardian, committee or legal representative, as the case may be, shall have a prior right to letters in his place and stead."

The question, accordingly, arises as to whether the testator of the applicant, as the husband of the present intestate, was, as of the date of her death, " entitled to take all the personal " estate which she possessed, within the connotation of this enactment. If such was his right his executor has succeeded to his prior claim to receive letters of administration, otherwise such executor possesses no standing in this regard.

In *Matter of Brown* (153 Misc. 41) this court had occasion to consider the relative rights to letters of administration of a creditor of an allegedly insolvent estate and a statutory distributee, concluding (at p. 45) " that the sole consideration in the determination of whether or not a particular next of kin is entitled to receive letters of administration * * * turns upon whether he is given a right by article 3 of the Decedent Estate Law to share in the net assets of the estate, and not at all on whether there will be any assets to distribute when the administration has been completed."

The court sees no reason to alter its views thus expressed, and deems the principle thus enunciated to underlie the determination in the issue at bar.

Counsel for the half-sister has attempted to excerpt certain language from this opinion, and urges it as authority for a result wholly contrary to the decision attained. The impropriety of such a course has been made the subject of frequent judicial comment. (*Dougherty* v. *Equitable Life Insurance Co.*, 266 N. Y. 71; *Gwynne* v. *Board of Education*, 259 id. 191, 196; *Matter of Sunderov*, 156 Misc. 661, 664, 665; affd., 249 App. Div. 763; affd., 274 N. Y. 525; *Matter of Davison*, 137 Misc. 852, 858; affd., 236 App. Div. 684; *Matter of Galloway*, 139 Misc. 183, 184; *Matter of Marsh*, 143 id. 609, 617.) As was said by Judge (now Chief Judge) CRANE (at p. 88 on the case first cited): " No opinion is an authority beyond the point actually decided, and no judge can write freely

if every sentence is to be taken as a rule of law separate from its association."

Taking the actual decision in *Matter of Brown* as a starting point, the right to receive letters of administration depends primarily upon the distributive rights accorded by article 3 of the Decedent Estate Law, to share in the net assets of the estate, with the express limitation contained in the first three paragraphs of section 118 of the Surrogate's Court Act, that the only portion of the estate which is here pertinent is the " personal property " of the decedent.

This remits the inquiry in the present instance to subdivision 4 of section 83 of the Decedent Estate Law, which provides: " If the deceased leaves a surviving spouse, and no descendant, parent, brother or sister, nephew or niece, the surviving spouse shall be entitled to the whole thereof," *i. e.*, " of the surplus of his or her personal property after payment of debts " (section 83, unnumbered paragraph), " but if there be a brother or sister, nephew or niece, and no descendant or parent, the surviving spouse shall take ten thousand dollars and one-half of the residue and the balance shall * * * be distributed to the brothers and sisters and their representatives."

Obviously, the decedent of the present executor was, therefore, entitled to take the first $10,000 of the net distributable personal estate of the decedent after the deduction of any debts, which by reason of the priority accorded to administration and funeral expenses over debts (*Matter of Dimou*, 149 Misc. 83, 84, 85; *Matter of Wishart*, Id. 343, 345; *Matter of Matyasz*, 151 id. 370, 374; *Matter of Derry*, 161 id. 135, 140) implies the net estate after payment of these charges in addition.

Returning, now, to the second paragraph of section 118 of the Surrogate's Court Act, the court is admonished that " if a person entitled to take all of the personal estate * * * has died, his * * * legal representative *. * * shall have a prior right to letters* in his place and stead." (Italics not in original.)

It has repeatedly been determined that the order of priority to letters specified in the statute is mandatory (*Matter of Kelly*, 238 N. Y. 71, 78; *Matter of Campbell*, 123 App. Div. 212, 216; affd., 192 N. Y. 312); that the surrogate has no discretion in this regard (*Matter of Winkhous*, 157 Misc. 560, 561; *Matter of Baumes*, 160 id. 563, 564); and that letters may not be refused to those entitled thereto (*Barrett* v. *Miner*, 119 Misc. 230, 238). Such being the fact, it would be an act of some temerity for any court to assert, as argued by counsel for the half-sister, that it would refuse, because of the trouble involved, to conduct the judicial inquiry necessary for a determination of the facts essential of ascertainment

respecting the person who has been accorded the statutory right to priority of letters. Convenience is not a consideration in any case when the performance of a mandatory judicial function is involved. Furthermore, a determination in this regard could seldom, if ever, involve the expenditure of time and labor required in the ascertainment of the status of purported contestants to a will or distributees in intestacy as exemplified in *Matter of Wendel* (143 Misc. 480); *Matter of Herle* (157 id. 352) or *Matter of Wood* (164 id. 425).

The issue has been fairly raised in this proceeding that the net distributable personal estate of this decedent will be less than $10,000. *Prima facie* this position is correct, since, as noted, the half-sister categorically swore in her initiating petition: " That said deceased at the time of her death was possessed and the owner of certain personal property, *the value of which does not exceed the sum of $7,000.*" (Italics not in original.) Perhaps it may be argued that this statement should be deemed untrue, since the additional vital allegation of the non-existence of a husband has been demonstrated to be false, it cannot, however, be deemed to demonstrate the verity of her present assertion " that the personal estate of * * * the deceased herein, is in excess of $17,000."

All which can presently be determined is that the identity of the person to whom letters must issue under the mandatory directions of the statute, is in doubt and the pertinent facts in this connection must be ascertained before decision of this issue is possible.

The court is pleased to note that in the only other adjudication on the question (*Matter of Karp*, 163 Misc. 855), the views of Surrogate Tuck of Saratoga county correspond with those hereinbefore expressed.

The concrete determination made is accordingly as follows: (1) The executor of Thomas F. Madden is permitted to intervene in this proceeding; (2) the report of the referee as to the truth of the essential allegation in the original petition for letters by Elizabeth Conklin that the decedent left no husband her surviving, will be confirmed; (3) the new issue respecting the right of the executor of Thomas F. Madden to receive letters as the person entitled to take all of the distributable personal estate of the decedent will be remitted to the same referee for hearing and report.

Enter orders of confirmation and reference, on notice, in conformity herewith.