BERGEN COUNTY SURROGATE'S COURT.

IN RE ESTATE OF FRANK JACOBSEN, DECEASED.

Decided November 3, 1944.

For the petitioner, *Joseph H. Gaudielle* and *Thomas Brunetto.*

PACHELLA, SURROGATE. This is a petition dated November 29th, 1943, by the alleged widow of Frank Jacobsen, late of Ridgefield Park, who served in the merchant marine on a vessel which was torpedoed and sunk through enemy action on October 27th, 1942, for letters of administration on his estate. According to the petition the deceased also left him surviving, a brother and sister in Norway. A hearing was held on this petition and testimony taken by the surrogate on October 5th, 1944, at which time the case was taken under advisement. On October 26th, 1944, petitioner, Elsie Jacobsen filed what purports to be a discontinuance and withdrawal of her petition.

Previously, on March 18th, 1943, this same petitioner, using the name Mrs. Elsie Zingerman, filed a petition for letters of administration on the same estate, with the late Surrogate Hopper, setting forth that she was a creditor to the extent of $200, due her from decedent for rent and lodging. She listed the decedent's brother and sister as the only heirs-at-law and next of kin entitled to said estate. She did not include herself as widow or as next of kin and her affidavit annexed to the petition, taken by the late surrogate, states that the "Petition is in all things correct and true of

her own knowledge and belief." On April 22d, 1943, Surrogate Hopper entered an order to grant letters of administration to Mrs. Elsie Zingerman (now applying as Mrs. Elsie Jacobsen) upon the posting of a bond in the sum of $6,000, with sureties to be approved by the surrogate. The bond was never posted. On December 9th, 1943, a few days after the death of Surrogate Hopper, a discontinuance was filed and the original petition of March 18th, 1943, was discontinued. On the same day she filed the second petition (dated November 29th, 1943) which is now before us for consideration.

Under these circumstances, and the facts hereinafter stated, is petitioner entitled as a matter of right, to withdraw her second petition for administration? I am of the opinion that she has no such absolute right.

The term "discontinuance" is the name applied to the voluntary withdrawal of a suit by a plaintiff. 12 *Words and Phrases (Perm. Ed.)* 557.

As a general rule, a discontinuance must be by leave of court, express or implied and on its order and cannot be accomplished by the mere act of plaintiff alone. 27 *C. J. S., Dismissal and Nonsuit,* 164, § 11; 18 *C. J.* 1150, § 7.

One instituting a proceeding has no absolute right at all times and under all circumstances to discontinuance, dismiss or take a nonsuit, without prejudice to the bringing of a new proceeding. 27 *C. J. S., Dismissal and Nonsuit,* 160, § 7.

Our statute provides that in the law courts "plaintiff shall have no right to submit to a nonsuit after the jury has gone from the bar to consider its verdict." *R. S.* 2:27–235; *N. J. S. A.* 2:27–235; *Bauman* v. *Whitely,* 57 *N. J. L.* 487; 31 *Atl. Rep.* 982; *Greenfield* v. *Cary,* 70 *N. J. L.* 613; 57 *Atl. Rep.* 269.

Plaintiff is not entitled as of right to dismiss or take a nonsuit after the cause has been submitted for a final decision to the jury or the court trying the case as a jury. 18 *C. J.* 1155, § 22; 27 *C. J. S., Dismissal and Nonsuit,* 174, § 20.

"There is no common law practice authorizing a voluntary nonsuit after the case has been submitted to the trial judge for decision without a jury." *Wolf Co.* v. *Fulton Realty Co.,* 83 *N. J. L.* 344; 84 *Atl. Rep.* 1041.

In a case tried without a jury, the judge performs the function of the jury and having heard the case and reserved decision, he must be considered in the position of "the jury having gone from the bar to consider their verdict." *Schuman* v. *Morey-Larue Laundry Co.*, 28 *N. J. L. J.* 239; 18 *C. J.* 1156, § 23.

It may be contended that the rules of the law courts do not apply to the probate courts. The surrogate's practice, like that of other probate courts, follows Chancery practice. *In re Kellner's Estate*, 121 *N. J. Eq.* 243; 189 *Atl. Rep.* 91; *In re Gilbert's Estate*, 18 *N. J. Mis. R.* 540; 15 *Atl. Rep.* (2d) 111; *Clapp on Wills and Administration in New Jersey*, *Supp. Vol.* 2, § 452.

The rules of the Orphans Court do not cover the question of discontinuance, but by rule 75, *N. J. S. A. tit.* 2, provide that in cases not covered by these rules, the practice, procedure and rules of the Court of Chancery and the Prerogative Court shall, in so far as applicable apply to the Orphans. Court (Surrogate's Court included) in the exercise of powers within the sphere of its jurisdiction.

Both Chancery rule 113 and *R. S.* 2:29–50; *N. J. S. A.* 2:29–50, provide that where a hearing has been commenced, and the taking of proofs upon such hearing has been begun by complainant upon his bill, the complainant shall not be allowed to dismiss his bill except upon good cause shown and by a special order.

"It is true, ordinarily that the reasons moving a suitor to dismiss his action are immaterial, but in practice reasons for such a course are frequently assigned and in the absence thereof may be significant in ruling upon the motion for voluntary dismissal." *Delahoyde* v. *Lovelace*, 39 *N. M.* 446; 49 *Pac. Rep.* (2d) 253, 257.

We realize that it is always a strong measure to prevent a plaintiff or petitioner from going on with or discontinuing his action or petition. In the case at bar the record shows no reasons assigned by the petitioner for her alleged discontinuance. To allow her to discontinue without prejudice, would permit her, in addition to the applications made to my predecessor, and to me, to make a subsequent application to

my successor or to the Prerogative Court. The impropriety of this is apparent. Petitioner's discontinuance is therefore denied and we proceed to hear the matter on the merits.

The history of the case is illuminating. In her original petition to the late Surrogate Hopper, petitioner, as Mrs. Elsie Zingerman, applied as a creditor of the decedent, claiming $200 for rent and lodging. In her present petition under consideration, using the name Mrs. Elsie Jacobsen, petitioner applies as the common law widow of the decedent.

To become entitled to letters of administration as the widow of intestate the applicant must show a lawful marriage subsisting at the time of his death. 33 *C. J. S., Executors and Administrators,* 929, § 35 (2).

The applicant produced evidence to show that she and decedent had entered into a common law marriage in New York in 1926 and moved to Bergen County in 1935. A cousin, who also accompanied her when she filed her original petition, and a neighbor, testified as to reputation and cohabitation of the parties as man and wife.

When asked to reconcile the discrepancy as to her personal status in the two applications for letters of administration, and specifically asked why she didn't list herself as the widow of Mr. Jacobsen in the original petition, petitioner testified that she left all that to her cousin who gave the information to the surrogate. She alleged that the surrogate recommended that she list herself as a creditor. She admitted that she signed the petition and affidavit before the surrogate. Later she stated that she didn't recall why she didn't list herself as the widow. "He didn't say what name to put down, so I put down by usual name."

Her cousin testified, "I spoke with Mr. Hopper, and he advised us, that upon the facts presented, that the best way to approach the matter was to apply for letters of administration in the form of a creditor——."

The surrogate then questioned him as follows:

"*Q.* Did the surrogate explain to Mrs. Zingerman [on the first application] and yourself that by applying as a creditor and saying that she was owed $200, that would be all she would receive? *A.* No. That she would be appointed ad-

ministratrix and by getting the appointment to be administratrix of his estate she would receive all his money.

"*Q.* Was it explained to her that she would receive only the $200? *A.* No, Surrogate Hopper explained that she would receive the full estate.

"*Q.* Surrogate Hopper said that? *A.* Yes.

"*Q.* In other words, she would apply as a creditor for $200 and then she would receive the $5,500 when she became administratrix? *A.* Yes. That was the impression that both Elsie and myself received from Surrogate Hopper.

"*Q.* And it was explained to the surrogate that Mr. Jacobsen had a brother and sister in Norway, as listed in the petition? *A.* That was presumed to be, from the last correspondence, that they were living somewhere.

"*Q.* You were present when your cousin signed this petition *P-3,* and the surrogate took her acknowledgment to the affidavit, and explained to her that she was swearing to the truth? *A.* Yes."

It is almost needless to state that the foregoing testimony is incredible. Surrogate Hopper presided in this court for twenty-six years. It is highly significant that the first petition was discontinued a few days after his death although the matter had been pending for months.

The burden of proving a marriage rests on the party who asserts it. 38 *C. J.* 1321, § 97.

If the surrogate determines that the applicant is not the widow of the late Frank Jacobsen, then it follows that letters of administration of his estate must be denied to her. *In re Brugnoli's Estate,* 97 *N. J. Eq.* 349; 127 *Atl. Rep.* 165; *In re West's Estate,* 2 *N. J. Mis. R.* 526.

There is a distinction between the fact of marriage and the evidence thereof, and the acknowledgment of the marriage by the parties does not constitute a marriage but is merely evidence of it and is not conclusive evidence thereof. *Keller* v. *Linsenmyer,* 101 *N. J. Eq.* 664; 139 *Atl. Rep.* 33.

Clear, consistent and convincing evidence is required to establish common law marriage, validity of which is always open to suspicion, especially when one party is dead. *In re Heitman's Estate,* 154 *Misc.* 838; 279 *N. Y. S.* 108; *affirmed,*

247 *App. Div.* 885; 288 *N. Y. S.* 876; *affirmed,* 272 *N. Y.* 533; 4 *N. E. Rep.* (*2d*) 435; *In re Mattice's Estate,* 147 *Misc.* 143; 263 *N. Y. S.* 531; *In re Brigg's Estate,* 138 *Misc.* 136; 245 *N. Y. S.* 600.

Evidence of admissions made by deceased tending to show marital relation with person seeking to inherit as surviving wife should be scrutinized with care and acted on with caution. *In re Pratt's Estate,* 233 *App. Div.* 200; 251 *N. Y. S.* 424.

In addition to the applicant's original petition in which she did not list herself as the widow of the decedent, but on the contrary swore that the only heirs were a brother and sister in Norway, the following facts adduced by the testimony must be considered in determining whether applicant was Mr. Jacobsen's widow.

She testified that she usually used the name Zingerman, not Jacobsen. She carried on a business under the name of Zingerman. In all of the correspondence from the United States Coast Guard, the employers of the decedent, the telegram of notification of decedent's loss, and the letters written to her by decedent himself, she was addressed as Mrs. Zingerman, not Jacobsen. These are important facts to be considered. *State* v. *Bradley,* 122 *N. J. L.* 575; 7 *Atl. Rep.* (*2d*) 286.

The decedent did not list her as his wife in his application for citizenship. None of the correspondence from the government officials or the employers of decedent to her, refer to her as the wife or widow of decedent. In fact, *Exhibit P-6,* a letter from the employers, is addressed to her as Mrs. Elsie Zingerman, and states that Mr. Jacobsen "named you as his friend to be notified in case of death."

From all of the foregoing, I determine that a common law marriage between the applicant and the decedent has not been established and that her petition for letters of administration of his estate should be denied.