ETHEL FIDANQUE, Plaintiff, *v.* R. FRED FIDANQUE, Defendant.

Supreme Court, Special Term, New York County, June 8, 1949.

*C. Rothberg* for plaintiff.

*H. Pollock* for defendant.

Isidor Wasservogel, Official Referee.   This is an action for a separation brought on the grounds of desertion and abandonment, failure and refusal to support, and conduct of the defendant making it improper, unsafe, and dangerous for the plaintiff to cohabit with him.

Because of the unusual factual situation, it becomes necessary for the court to determine, first, whether or not the parties involved herein are legally husband and wife.   No ceremonial marriage, civil or religious, was ever performed or entered into by the litigants.   Plaintiff met the defendant for the first time in Newark, New Jersey, through members of her family, who had known him for a period of time.   After a short courtship, plaintiff alleges that the defendant proposed marriage to her and she accepted his offer.   On October 6, 1946, a dinner, celebrating the purported forthcoming marriage, was held in a restaurant in Newark, New Jersey, at which members of plaintiff's family attended to congratulate the prospective bride and groom.   Thereafter, plaintiff contends, the defendant asked her to go to Lakeland, Florida, to have the marriage ceremony performed because his mother was supposedly ill and could not leave Florida to attend a wedding.

The parties arrived in Lakeland, Florida, on October 10, 1946, and were joined shortly thereafter by plaintiff's seventeen-year-old daughter by a previous marriage, who then commenced to reside with them.   Plaintiff and defendant lived together as husband and wife until June 5, 1947, at which time defendant allegedly abandoned plaintiff, returned north, and remarried his former wife, from whom he had been divorced before he met plaintiff.

Defendant concedes that he held plaintiff out to many persons as his wife but claims that he did so to satisfy the conventions of public decency and morality, instead of flaunting her to the world as his mistress.   Plaintiff contends that a common-law contract of marriage was entered into between herself and defendant after he purportedly kept delaying and postponing the obtaining of a marriage license and the performance of a religious ceremony.   Plaintiff alleges that defendant told her that such formality was unnecessary, as " In the eyes of the law, we are husband and wife."   She cited three different occasions on which defendant said " You and I are husband and wife until death do us part."   Failing to get defendant's consent to

a formal marriage ceremony, plaintiff contends that she finally consented to enter into the purported common-law marriage contract, and thereafter continued to reside with defendant in Lakeland, Florida, as husband and wife.

It is well established that if parties enter into a common-law marriage in a State which sanctions such marriages, New York will recognize it as valid, even though such marriage was entered into at a time when an agreement of this kind could not have been entered into in New York (*Shea* v. *Shea*, 294 N. Y. 909; *Taegen* v. *Taegen*, 61 N. Y. S. 2d 869). The evidence is sufficient to show that the State of Florida sanctions such marriages, subject to the same limitations and restrictions as existed in New York prior to the abolition of common-law marriages in this State in 1933 (*Thompson* v. *Harris*, 148 Fla. 329; *McClish* v. *Rankin*, 153 Fla. 324).

A common-law marriage is an agreement between a man and woman, legally competent to contract a marriage and willing so to do, whereby they do, in each other's presence, consent to live as husband and wife. The factors of consent, ability, present promise, and cohabitation, or mutual and open assumption of marital duties and obligations are all necessary elements of such an agreement (*Matter of Monty*, 32 N. Y. S. 2d 705, revd. 264 App. Div. 7, revd. 289 N. Y. 685; " *Castellani* " v. " *Castellani* ", 176 Misc. 763; *Anonymous* v. *Anonymous*, 19 N. Y. S. 2d 229; *Zy* v. *Zy*, 13 N. Y. S. 2d 415). Though these factors have become accepted as being necessary before a relationship will be considered a common-law marriage, each case must be considered on its own facts and according to its own equities (*Matter of Mattice*, 147 Misc. 143; *Matter of Apostol*, 53 N. Y. S. 2d 661). No words of art or formal ceremony are required to enter into such a binding marriage contract. The parties may express their agreement orally or enter into such a ceremony as may satisfy their respective taste or tastes. The ultimate agreement that is reached is what makes the marriage contract. The words used or the ceremony performed are merely the evidence of the intention of the parties to become husband and wife (*Thompson* v. *Harris, supra*).

I hold that the testimony adduced before me is legally sufficient to establish a common-law marriage between plaintiff and defendant under the laws of the State of Florida and, as such, is recognized under the laws of the State of New York. The proof offered to assail the validity of a marriage must be evidence which is cogent and which does not allow of any other con-

clusion before the court will permanently brand the parties with the taint of turpitude and immorality (*Applegate* v. *Applegate,* 118 Misc. 359; *Wolf* v. *Wolf,* 109 Misc. 366). The burden of proof in such a case rests upon the party who alleges the invalidity of such a marriage (*Davies* v. *Lehigh Valley R. R. Co.,* 261 App. Div. 854).

Defendant failed to sustain this burden. He contends that had he and plaintiff agreed to marry, he would have insisted on a ceremonial marriage, " for a common law marriage would have been diametrically opposed to and in conflict with my traditions and orthodox religious upbringing ". Any argument based upon defendant's religious scruples and mores is clearly refuted by the illicit and meritricious relationship which defendant maintained with plaintiff prior to the time they entered into their common-law marriage agreement.

The conceded holding out of plaintiff as defendant's wife, their admitted cohabitation, their conduct, habit, repute, oral declarations and letters by defendant to plaintiff are all matters which indicate the intention of the parties herein to live as husband and wife. The evidence which tends to show that defendant may have had acquaintances who were unaware of the marriage, or that he may have held property in his individual name or in the name of a person other than plaintiff after they entered into their common-law relationship, is entitled to little weight in the light of all the other matters brought to my attention (*Matter of Gally,* 253 App. Div. 905; *Matter of Reilly,* 165 Misc. 214; *Matter of Anderson,* 31 N. Y. S. 2d 552; *Matter of Apostol, supra*).

Upon the evidence before me I hold that defendant willfully abandoned the plaintiff and has failed to provide for her support and maintenance. Judgment is rendered for plaintiff. Alimony is awarded in the sum of $60 per week.

Submit decree containing provisions for costs to plaintiff within ten days on three days' notice.

The foregoing are the facts found by me and constitute the decision of the court as required by section 440 of the Civil Practice Act.