John D. Bennett, S.
A brother of the decedent and her niece each petition for letters of administration. The petition of the brother must be granted and that of the niece denied. See Matter of Hoppin (3 Misc 2d 315, 317) where this court said: “ The priority of each subdivision in section 133 over a succeeding subdivision was (and is) inflexible in determining the choice among competing petitioners (Matter of Murphy, 304 N. Y. 232, 236, supra; Matter of Cullinane, 182 Misc. 830, 832). Similar rigidity in choice under section 118 is imposed by the Legislature in terms of the priority of each subdivision over one later enumerated (Matter of Kelly, 238 N. Y. 71, 78; Matter of Campbell, 123 App. Div. 212, 216, affd. 192 N. Y. 312; Matter of Kogan, 203 Misc. 739, 740; Matter of Reilly, 165 Misc. 214, 220; Matter of Winkhous, 157 Misc. 560, 561; Matter of Baumes, 160 Msc. 563).”
The incidental relief requested by the successful petitioner is also granted.
Ordinarily the decision of the court would end at this point. The facts present here, however, speak so eloquently of the necessity for executing a will and for complying strictly with the statutory requirements for adoption that the facts found in the affidavits will be set forth.
Both petitioners point out that of the five brothers of the decedent, three have predeceased her. One is the successful petitioner. Another is stated in the same petitioner’s affidavit to have “ severed all ties with his family and relatives ”. The affidavit also states that this brother’s wife “ could only guess that he was somewhere on the Bowery”. The unsuccessful petitioner is one of six children of a deceased brother. Her share of the estate is apparently, therefore, one sixth of one fifth or one thirtieth, while the surviving brothers are apparently entitled to one fifth each. How unlikely it is that this was the result intended by the decedent may be judged from the uncontradicted facts set forth in affidavits submitted by the niece. Her own affidavit states: “ That your petitioner was adopted informally as an infant at the age of 11 months by the above named decedent and up to the time of marriage lived with her Aunt and never knew any other home but that of her Aunt and was trained by her Aunt to call her ‘ Mother ’. I was taken to my Aunt’s home at the age of 11 months and I resided with my Aunt who was the only Mother I ever knew. We resided in Manhattan in 99th Street with my Hncle Edward J. Toolan. I was sent to school at the age of 7 years to the Holy Name School in 9th Street and Amsterdam Avenue, New York City. I never knew until my real mother died that I was not *793 the actual child of my Aunt Nellie Toolan. My Aunt and Uncle spent the winter months in New York and spent the summers at Long Beach. About 1940 my Uncle Edward who was in the Bar and Grill business became ill and retired from business. We then moved permanently to Long Beach. I was sent by my Aunt Nellie Toolan to Long Beach Junior High and Senior High School. 1 graduated from the Long Beach Senior High School in the year 1945. After my graduation and still under the loving care and close relationship with my Aunt, I worked in Whelan’s Drug Store in Long Beach. After my marriage I kept in contact with my Aunt. She was very fond of me and would often call me at Stockton, California, and we would exchange long conversations. The telephone records will substantiate the number and frequency of these affectionate calls from my ‘ mother ’ who living alone was lonely at times and sought loving solace by calling me. I am the closest person and dearest relative she ever had. I always called my Aunt Mother ’ and my Uncle ‘ Father ’. Last Christmas I received a Christmas card signed by my Aunt as ‘ mama ’.”
A supporting affidavit states: “ I have been up to the time of her death the closest friend of Mrs. Nellie Toolan. I was a frequent visitor at her home in Long Beach. I knew her before she was married. Our families originally came from the same County in Ireland. In fact I believe that I was the last relative to visit her at her home, having been there about 2 weeks before her death. I knew Nellie Creegan Toolan when she first came to this country. Being a relative I have been in close and friendly contact with her ever since. I knew her whole family. I knew her husband and I was a close friend to him during all of his painful illness finally ending with his death by cancer. Mrs. Toolan frequently spoke to me telling me of many details of the happenings of her daily life of which I could relate great number. Margaret Creegan, now Margaret Sims, was more than a daughter. The child never knew she was not a real daughter until she had grown considerable. Mrs. Toolan called her ‘ daughter ’. She lavished all kinds of care upon her. Money was no object. I have read the affidavit of Margaret Creegan Sims (annexed hereto). Her father was Cornelius Creegan, now deceased. Margaret is a niece of Mrs. Toolan. All of the facts stated in the affidavit are true. She was the joy of her Aunt, the decedent and was a true daughter to her in every way.”
It is unnecessary to dwell at any length on the object lesson presented by this situation. If the “ informal ” adoption had been legalized, the unsuccessful petitioner would now be the *794 only person entitled to inherit in the event of intestacy. If the decedent had left a will, it seems quite improbable that her “ informally adopted daughter ” would have been left one thirtieth of the estate. The circumstances here justify reiteration of a suggestion previously made by this court that: “ This is another instance where ignorance on the part of a decedent of the need for proper testamentary disposition of property has resulted in frustration of his clear intention. This is a regrettable circumstance but will unfortunately recur unless the public is made aware of the necessity of complying with the Statute of Wills. It further points up the necessity for further education of laymen and perhaps a more intensive distribution of such education brochures as ‘ Do you need a Will? ’ prepared and issued as a public service by the Public Information Committee of the New York State Bar Association (1935).” (Matter of Schultz, 152 N. Y. S. 2d 959, 963.)
Submit decree on notice in which decree the amount of the bond will be fixed.