John C. Bo yuan, S.
Two applications seeking limited letters of administration in the estate of Joseph Pugarelli are before the court. One of the applicants is a son of the decedent by his first wife; the other claimant is decedent’s second wife. Both wives have survived the decedent and are presently living.
It appears from the evidence before the court that the first wife obtained a decree of divorce against the decedent, in the State of Florida. There are four children of the first marriage and none of the second.
The petitioning son now contends that his mother’s divorce against the decedent was invalid and consequently the validity of the second marriage is in issue. The entire file in the divorce proceeding has been received in evidence and reflects that the first wife was the complainant; recites that she was a resident of Florida seeking a divorce on the ground of extreme cruelty, directed toward her by the decedent. She was properly represented by counsel in that proceeding, as was the decedent. He filed an answer in which he admitted certain of the allegations and denied others. The matter was referred to a Special Master duly appointed by the Circuit Court of the State of Florida to take testimony and report his findings of fact and conclusions of law, which he did. The court thereupon entered its decree dated September 5, 1951, dissolving the marriage between the decedent and his first wife. The evidence presented shows that both appeared in the divorce proceeding. It was contested and *458 after hearing, the issues were resolved. The second wife, Josephine Pugarelli, challenges the right of the son to attack, in New York, the validity of the Florida divorce.
Where the parties appear and raise issues which result in a contest, a hearing had, a determination made of the issues, the parties participating are barred from attacking the resultant decree collaterally in the State of New York (Coe v. Coe, 334 U. S. 378; Glaser v. Glaser, 276 N. Y. 296; Kleinberg v. Kleinberg, 7 Misc 2d 233). '
In Johnson v. Muelberger (340 U. S. 581, 589), the court held that the State of Florida would not permit a child of a former marriage to attack a divorce decree between her parents, and said, ‘" When a divorce cannot be attacked for lack of juris- . diction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union. The Full Faith and Credit clause forbids. ’ ’
In Cook v. Cook (342 U. S. 126), the court held to the same effect as it did in Johnson v. Muelberger, but said that if the defendant spouse had neither appeared nor been served in Florida, a sister State could reopen the issue of domicile. The case at bar does not come within these exceptions.
In Moore v. Moore and in four other divorce proceedings, the decrees were set aside by the Circuit Court in the Eighth Judicial Circuit of Florida on the ground that a fraud had been perpetrated on the court. The 10 parties in those proceedings were residents of, and domiciled in Suffolk County, New York. None of them had complied with the residential requirements set forth in the Florida statute. Honorable J. P. Cohalan, Jr., the District Attorney of Suffolk County, complained to the Attorney-General of Florida and furnished him with affidavits to the effect that none of the plaintiffs had resided in Florida at any time during the three-month period next preceding the filing of the complaint, nor at any time prior to the granting of the divorce decrees. The affidavits, all of which were made by the five plaintiffs, alleged that none of them appeared at the trial, nor complied with the residential requirements. The plaintiffs were residents of Suffolk County, New York. The Attorney-General of the State of Florida was the petitioner in the proceedings to set aside the decrees. The court granted the five petitions upon the ground that the plaintiffs, in the circumstances, had committed fraud on the court. These cases are readily distinguishable from the case at bar and those cited above. The decrees were not attacked collaterally but by the State of Florida, through its Attorney-General.
*459 The court, therefore, holds that the divorce decree granted in the State of Florida to decedent’s wife cannot be attacked collaterally by the stepson.
The petitioning son also filed objections to the grant of limited letters of administration to Josephine Pugarelli, the second wife, on the grounds that she is unable to read or write the English language, and that she is incompetent to execute the duties of an administratrix because of want of understanding. Section 118 of the Surrogate’s Court Act prescribes the priority of appointment in intestacy as follows: " ‘ Administration in case of intestacy must be granted to the persons entitled to take or share in the personal property, who are competent and will accept the same, in the following order: 1. To the surviving husband or wife. 2. To the children.”
The priority set forth is mandatory and unless barred by section 94 of the Surrogate’s Court Act the person in the first category must be appointed (Matter of Reilly, 165 Misc. 214).
That section provides: “ No person is competent to serve as an executor, administrator, testamentary trustee or guardian, who is * * *
‘ ‘ 5. Incompetent to execute the duties of such trust by reason of drunkenness, dishonesty, improvidence or want of understanding.”
Josephine Pugarelli, the second wife, took the stand as a witness in her own behalf. The court was thus able to'observe her demeanor. She admitted an inability to read or write the English language and that she had no formal education. She could count up to 100, however, when asked whether 39 were greater than 42, she answered that 39 was larger. Many other questions were asked as to which of two numbers was the greater. Some she answered correctly, others incorrectly. Although the answer 39 was incorrect, the court does not attach too much significance to it. She gave the impression of unfamiliarity with court procedure and it was apparent that she was tense and nervous.
The court is of the opinion that, if the same questions were asked under different circumstances, she would probably give the correct answers and doubts, that if a debtor endeavored to pay her in full with a lesser sum that he owed, she would accept and give a receipt for the full amount.
All the questions asked and the answers given by her were in the English language and indicated she comprehended the full import of both. She came to this country when a youth, remained, and speaks and understands our language as well as any native born who has not had the benefit of formal education.
*460 The court having held her to be the lawful widow and therefore the person with a prior right to letters, it now becomes necessary to determine whether she is competent to become the fiduciary. The sole ground in opposition to her appointment is, want of understanding as used in section 94 of the Surrogate’s Court Act as herein above quoted. This clause means that she must have that measure of intelligence to comprehend the duties and obligations reposed in an administratrix, together with the nature and extent thereof (Matter of Leland, 175 App. Div. 62, affd. 219 N. Y. 387).
The duties and the responsibilities of the fiduciary in this proceeding would be governed by the type of letters to issue, which in this case, would be limited and restricted for the purpose of bringing an action for wrongful death, pain and suffering. That proceeding would be conducted entirely by an attorney and if there were a compromise, this court would have to approve or disapprove. There are no other assets in the estate and the distribution of any recovery would be under the supervision of the court. The fact that the second wife has no formal education does not act as a deterrent in our circumstances. She appeared intelligent, keen, alert, in good health, and aware of the aspects of the situation (Matter of Leland, supra).
The experience of the court has been that there is no correlation between intelligence and education. Intelligence is innate, while education is acquired. One may be highly intelligent and have no formal education. The converse is true and one may be well educated, the recipient of a college degree and have a subnormal intelligence quotient.
Mentally and emotionally man is his innate self, his environs, education and experiences. These factors taken together tend to influence his behavior and mold his character.
Joseph A. Pugarelli, son of the decedent, stepson of the widow, testified that he was unfriendly toward his stepmother but refused on many occasions to say that he was very unfriendly or that there was a feeling of animosity on his part. The court does not accept these statements as true and finds as a matter of fact that the feeling between him and her is not only unfriendly, but is also one of animosity, hatred and hostility. The other stepsons were called as witnesses and so far as their attitudes toward the stepmother, testified precisely the same as the petitioner. The stepdaughter, who could have filed a petition for appointment, was not called as a witness, nor did she *461 file a petition for appointment, which was not necessary, but would have indicated her willingness to serve. This, however, is not considered as a fact unfavorable to the petitioner son. -
In the death action, the widow in all probability would be granted a vastly greater sum for her pecuniary loss because of the death of decedent, than would be awarded for pain and suffering, since the decedent died shortly after the accident and was dead when the son arrived one or one and one-half hours later. It could be that he died instantly. The widow is 43 years of age and has an expectancy of 25.99 years. The court is convinced that the stepson would not prosecute that part of the cause of action for wrongful death to the limit of his ability. She will be the sole owner of the amount awarded for pecuniary loss and a one-third part of any amount granted for pain and suffering. The four children would be limited to a one-fourth of a two-thirds part of the amount that would be received for pain and suffering, if any amount is awarded therefor. The stepson, Joseph Pugarelli, would be entitled to only a one-sixth part thereof.
The petition of the wife, Josephine Pugarelli, is granted and the petition of the son, Joseph A. Pugarelli, is dismissed.
Enter decree accordingly.